United States Court of Appeals
Fifth Circuit

**F I L E D**

**November 28, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

No. 05-20351
Summary Calendar

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RAFAEL GARCIA-FLORES,

Defendant-Appellant.

--------------------
Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:04-CR-350-ALL
--------------------

Before KING, HIGGINBOTHAM, and GARZA, Circuit Judges.

PER CURIAM:[*]

Rafael Garcia-Flores (Garcia) pleaded guilty to count 5 of a superseding indictment, charging him with illegal re-entry after deportation, and was found guilty after a bench trial of counts 1, 3, and 4, of the superseding indictment charging him with unlawfully transporting aliens for the purpose of financial gain resulting in the death of an alien and aiding and abetting, of being a felon in possession of a firearm, and of being an alien in possession of a firearm.  Garcia was sentenced within the guideline imprisonment range to a 150-month term of imprisonment as to count

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

1 and to concurrent 120-month terms of imprisonment as to counts 3, 4, and 5 and was ordered to serve concurrent three-year periods of supervised release.

At the bench trial, the Government introduced evidence showing that Garcia was transporting three illegal aliens from a house in Houston to a grocery-store parking lot. One of the aliens was Jimy Lopez-Mejia Garcia. His brother, Jose Santos Lopez-Mejia, was going to meet Garcia in the grocery-store parking lot and pay for Jimy's release. During the transaction, Jose and Garcia got into a knife fight. Garcia drove away, with Jose Lopez hanging on the side of Garcia's truck. Garcia pulled a 9mm pistol and the other men in the truck struggled with Garcia. The pistol discharged once. The truck struck a telephone pole and two other vehicles. Jose Lopez was thrown to the pavement and was killed.

In general, 8 U.S.C. § 1324(a)(1)(A) makes it a crime to transport illegal aliens. § 1324(a)(1)(A). Section 1324(a)(1)(B)(iii) and (iv) establishes increased maximum penalties if, during the commission of a violation of subsection (a)(1)(A), the defendant causes any person to suffer serious bodily injury or death or placed in jeopardy the life of "any person." § 1324(a)(1)(B)(iii) & (iv); United States v. Williams, 449 F.3d 635, 644–45 (5th Cir. 2006). Garcia contends for the first time on appeal and without citation that the term "any person" refers only to undocumented aliens alleged to have been transported. Our review is for plain error. See United States v. Alfaro-Hernandez,

453 F.3d 280, 281 (5th Cir. 2006). Garcia has not identified and we have not found any case in which a court has interpreted the statute in the manner in which Garcia contends it should be interpreted. Accordingly, the district court could not have committed a clear or obvious error in giving the term "any person" its ordinary and natural meaning. See United States v. Hall, 110 F.3d 1155, 1161 (5th Cir. 1997).

Garcia contends also that the district court erred by overruling his objection to an eight-level increase in his offense level under U.S.S.G. § 2L1.1(b)(6) because of Lopez's death. Garcia contends that the enhancement does not apply because Lopez was not one of the smuggled aliens. Our review is for plain error. See United States v. Villegas, 404 F.3d 355, 358 (5th Cir. 2005). Under § 2L1.1(b)(6)(4), a defendant's offense level is increased by eight levels "if any person died." United States v. Garcia-Guerrero, 313 F.3d 892, 898 (5th Cir. 2002). In overruling Garcia's objection, the district court found that Garcia's relevant conduct proximately caused Jose's death. The district court explained, "Smuggling aliens illegally with a loaded firearm could reasonably lead the smuggler to foresee the result in this case; that is, death and serious bodily injury to third parties who negotiate for the release of the illegally smuggled aliens." The district court's finding and its enhancement of the offense level under § 2L1.1(b)(6) was not plainly erroneous. See Villegas, 404 F.3d at 358.

Prior to the bench trial, the parties reached an agreement that Garcia would plead guilty to transporting an illegal alien for financial gain, a violation of § 1324(a)(1)(A)(ii) and (B)(ii) (count 1), and § 1326 (count 5), but would proceed to a bench trial as to the sentencing enhancements of count 1 related to bodily injury and death ((B)(iii) & (iv)) and as to the firearms counts (counts 3 and 4), in exchange for which the Government would agree to dismissal of count 2 (kidnaping).

Garcia contends that the district court erred in finding him guilty of § 1324(a)(1)(B)(iii) and (iv) because that finding "was not supported by the evidence and was contrary to the admonishments of the offense elements to which [he] entered his plea of guilty." We review the district court's acceptance of Garcia's partial guilty plea to count 1 for plain error. See United States v. Vonn, 535 U.S. 55, 59 (2002). We review the sufficiency of the evidence as to the bodily-injury-and-death enhancements in the light most favorable to the Government to determine "whether the finding of guilt is supported by substantial evidence, i.e., evidence sufficient to justify the trial judge, as the trier of fact, in concluding beyond a reasonable doubt that the defendant is guilty." United States v. Turner, 319 F.3d 716, 720–21 (5th Cir. 2003) (quotation marks omitted).

Garcia admitted at the rearraignment that he violated § 1324(a)(1)(A) by transporting illegal aliens for financial gain. Under § 1324(a)(1)(B)(iii) and (iv), the maximum penalty for such

violation is increased (to 20 years and death or life imprisonment, respectively) if, "during and in relation to" the violation, the defendant "causes serious bodily injury . . . to, or places in jeopardy the life of, any person" or if such violation results "in the death of any person." § 1324(a)(1)(B)(iii) & (iv); see Williams, 449 F.3d at 644-45. The evidence, viewed in the light most favorable to the Government, showed that, while Garcia was transporting illegal aliens in violation of § 1324(a)(1)(A)(ii), Jose Lopez became involved in an argument with Garcia regarding one of the aliens and that Lopez was killed when he was thrown to the pavement as Garcia attempted to leave the scene in his vehicle. The district court's finding of guilt is supported by substantial evidence. See Turner, 319 F.3d at 720-21. Garcia's substantial rights were not affected by any error in accepting Garcia's partial guilty plea as to count 1. See United States v. Olano, 507 U.S. 725, 734-35 (1993).

Garcia also contends that his guilty plea was involuntary because the district court failed to comply with FED. R. CRIM. P. 11. We review this issue for plain error. See Vonn, 535 U.S. at 59. As to count 1, Garcia contends specifically that the district court erred in admonishing him about the maximum punishment. The maximum term of imprisonment for transporting illegal aliens for financial gain or for engaging in a conspiracy to transport illegal aliens is ten years. See § 1324(a)(1)(A)(ii) & (v)(I) and (B)(i). If the defendant merely transports illegal aliens or aids and abets the

offense of transporting illegal aliens, the maximum penalty is five years. See § 1324(a)(1)(A)(ii) & (v)(II) and (B)(ii). The district court admonished Garcia that he faced a maximum sentence of 10 years for count 1. Garcia argues that the maximum sentence was five years because the evidence introduced at the bench trial showed that he was guilty of aiding and abetting only and so should have been convicted and sentenced pursuant to § 1324(a)(1)(B)(ii). Garcia admitted at the rearraignment that he had transported illegal aliens for financial gain. Therefore, the maximum sentence to which he was exposed as a consequence of his guilty plea was 10 years, under § 1324(a)(1)(A)(ii) and (B)(i). There was no error, plain or otherwise.

The district court admonished Garcia that he faced a maximum sentence of 20 years for count 5 (illegal reentry after deportation). Under § 1326(b)(2), an alien who reenters the United States following deportation, in violation of § 1326(a), who was convicted of an aggravated felony prior to deportation, faces a maximum term of imprisonment of 20 years. Garcia admitted that, prior to deportation, he was convicted of an aggravated felony, that is, a drug trafficking offense. Garcia contends that the prior felony involved marijuana possession for which he served a six-month sentence and that the district court erred in admonishing him that he faced a statutory maximum sentence of 20 years. Because he received only a six-month sentence for the marijuana-possession conviction, Garcia argues, he was not subject to the 16-

level enhancement under U.S.S.G. § 2L1.2(1)(A)(I) and the district court's admonition to the contrary and failure to define "aggravated felony" made his guilty plea involuntary. Garcia contends also that the error led to an incorrect application of the Guidelines. These arguments are without merit.

Under Almendarez-Torres v. United States, 523 U.S. 224, 235 (1998), the Court upheld the treatment of prior convictions as sentencing factors. Despite repeated attack, this court has held that Almendarez-Torres remains binding, despite the holding in Apprendi v. New Jersey, 530 U.S. 466 (2000). Accordingly, any failure on the part of the district court to admonish Garcia adequately regarding the impact of § 1326(b)(2) on his sentencing range could not have affected the voluntariness of Garcia's guilty plea to a violation of § 1326(a) and was not plainly erroneous.

Garcia admitted, in response to questioning by his own attorney, that he was deported following conviction for an aggravated felony. Instead of a 16-level increase in offense level, Garcia received a 12-level increase in offense level because of the prior felony. That increase impacted group II of the guideline calculation (count 5) but did not impact group I (counts 1, 3, and 4). Garcia did not object to the 12-level increase. Accordingly, our review is for plain error. See United States v. Vargas-Garcia, 434 F.3d 345, 347 (5th Cir. 2005), cert. denied, 126 S. Ct. 1894 (2006). Because the offense level for group I was higher, Garcia was sentenced pursuant to group I and the 12-level

enhancement had no effect on the total offense level and Garcia's substantial rights were not affected.

Garcia contends that the district court erred in overruling his objection to the lack of an adjustment in offense level for acceptance of responsibility. The reduction for acceptance of responsibility "'is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse.'" United States v. Sanchez-Ruedas, 452 F.3d 409, 414-15 (5th Cir. 2006) (quoting U.S.S.G. § 3E1.1, comment. (n.2)), cert. denied, 127 S. Ct. 315 (2006). The judgment is

AFFIRMED.