# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
May 14, 2013

Lyle W. Cayce
Clerk

No. 12-40295

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

SERVANDO ALVARADO-CASAS, also known as El Chino,

Defendant - Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before DAVIS, GRAVES, and HIGGINSON, Circuit Judges.[1]

HIGGINSON, Circuit Judge:

For the first time on appeal, Defendant-Appellant Servando Alvarado-Casas challenges his federal guilty plea conviction of conspiracy to commit aggravated alien transporting, arguing principally that his plea lacks an adequate factual basis, and that the district court misadvised him as to his sentencing exposure, rendering his plea involuntary. Concluding that the district court's error in accepting his guilty plea, if any, was not plain, and that its admonishment regarding his sentencing exposure, though clear error, did not materially affect his decision to plead guilty, we AFFIRM.

---

[1] Graves, Circuit Judge, concurs in the judgment only.

No. 12-40295

## FACTS AND PROCEEDINGS

Servando Alvarado-Casas was charged by indictment with twelve counts of transporting unlawful aliens causing serious bodily injury to, or placing in jeopardy the life of, any person, and one count of conspiring to commit that offense. Pursuant to a signed plea agreement, Alvarado-Casas agreed to plead guilty to the conspiracy count and to waive his right to appeal his conviction and sentence in exchange for the government's promise to dismiss the remaining counts in the indictment and to make certain sentencing recommendations. The plea waiver reads as follows:

> Defendant waives his/her right to appeal both the conviction and the sentence imposed. Defendant is aware that 18 U.S.C. § 3742 affords a defendant the right to appeal the sentence imposed. The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal only (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United States, as set forth in 18 U.S.C. § 3742(b). Additionally, the defendant is aware that 28 U.S.C. § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his/her conviction or sentence by means of any post-conviction proceeding.

At rearraignment, the district court asked Alvarado-Casas if he had read the plea agreement, had understood its terms, and had signed it voluntarily. Alvarado-Casas responded that he had. The district court admonished Alvarado-Casas that he faced up to ten years of imprisonment, and would not be allowed to withdraw his guilty plea if the sentence imposed was more severe than he expected. Alvarado-Casas responded that he understood. The district court explained the elements of the conspiracy offense and asked Alvarado-Casas if he understood them. Alvarado-Casas responded that he did. The government then gave the following factual basis statement:

No. 12-40295

> [O]n November 24th of 2009, border patrol agents advised ICE of a motor vehicle accident in which 17 illegal aliens and the driver [of the] vehicle had gone off an embankment, approximately a 40-foot drop. Border patrol agents and ICE officials responded to the area. They were able to determine that the 17 individuals that were in the bed of the pickup truck were illegally present in the United States. The majority were from Guatemala with, I believe, three Mexican citizens. One driver of the vehicle was identified as Patricio Rebollar. He, as well as the aliens were all transported to surrounding area hospitals. . . . ICE agents spoke to Patricio Rebollar, and he advised that he was, in fact, the driver of the pickup trunk and that he was transporting illegal aliens. He indicated that he was transporting the aliens for an individual that he identified as Chino. ICE agents were able to identify the individual that he identified as Chino as Servando Alvarado-Casas.

After confirming that the government's statement was accurate, Alvarado-Casas pleaded guilty to the conspiracy offense, and the court accepted his plea.

At sentencing, the district court adopted the presentence report ("PSR") and calculated Alvarado-Casas's Guidelines range to be 188 to 235 months of imprisonment based on a total offense level of 34 and a criminal history category of III.[2]  Alvarado-Casas made a number of objections, including that separate adjustments to his offense level for use and transportation of a minor constituted impermissible double counting.  The district court overruled the "double counting" objection, and sentenced Alvarado-Casas to 190 months of imprisonment.  Alvarado-Casas did not file a timely notice of appeal.

In June 2008, Alvarado-Casas filed a § 2255 motion challenging his conviction and sentence on the ground that his counsel provided constitutionally ineffective assistance by failing to file a timely notice of appeal.  After holding an evidentiary hearing, the district court dismissed the § 2255 motion without

---

[2] The PSR conservatively estimates that the sophisticated alien smuggling operation, led by Alvarado-Casas with assistance from a Mexican cartel, smuggled over 2,500 unlawful aliens to the United States over a five-year period, and received between $1,000 and $10,000 per alien.

No. 12-40295

prejudice, granted Alvarado-Casas leave to file an "out-of-time" direct appeal, and appointed counsel for that purpose.[3]  This appeal followed.

## DISCUSSION

On appeal, Alvarado-Casas argues that: (1) his conviction lacks an adequate factual basis because the stipulated facts did not establish that he personally caused serious injury to, or placed in jeopardy the life of, another person during and in relation to the offense; (2) his guilty plea was involuntary because the district court misadvised him of the nature of the conspiracy offense and the statutory maximum it carried and failed to ensure that he understood the consequences of waiving his right to appeal; and (3) his sentence was improperly calculated because it was based on separate adjustments to his offense level for use and transportation of a minor, which, he contends, constituted impermissible double counting.

### I.    Factual Basis

Rule 11 of the Federal Rules of Criminal Procedure was designed to "ensure that a guilty plea is knowing and voluntary, by laying out the steps a trial judge must take before accepting such a plea." *United States v. Vonn*, 535 U.S. 55, 58 (2002).  One such step is determining that a defendant's guilty plea is supported by an adequate factual basis. Fed. R. Crim. P. 11(b)(3) ("Before entering judgment on a guilty plea, the court must determine that there is a factual basis for the plea.").  The factual basis requirement "protect[s] a defendant who may plead with an understanding of the nature of the charge, but without realizing that his conduct does not actually fall within the definition of the crime charged." *United States v. Spruill*, 292 F.3d 207, 215 (5th Cir. 2002)

---

[3] Because the issue was not briefed by the parties, we take no position on the propriety of granting leave to file an out-of-time appeal as relief for a Sixth Amendment violation or whether doing so concomitant with *dismissing* a defendant's motion to vacate conforms with Federal Rule of Appellate Procedure 4(a)(6).

4

(quoting *United States v. Johnson*, 546 F.2d 1225, 1226–27 (5th Cir. 1977)) (internal quotation marks omitted). In reviewing guilty pleas for compliance with Rule 11(b)(3), the court evaluates whether "the factual conduct to which the defendant admits is sufficient as a matter of law to constitute a violation of the statute." *United States v. Marek*, 238 F.3d 310, 314 (5th Cir. 2001) (en banc) (emphases omitted).

The offense of conspiracy to transport unlawful aliens, 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(I), makes it a crime for a person to conspire to transport an alien within the United States, knowing or recklessly disregarding the fact that the alien was unlawfully present, with intent to further the alien's unlawful presence. Fifth Circuit Pattern Criminal Jury Instructions § 2.03 (2012). A person convicted of conspiracy to transport unlawful aliens is subject to a statutory maximum sentence of 10 years of imprisonment, 8 U.S.C. § 1324(a)(1)(B)(I), unless "during and in relation to" the offense, "the person causes serious bodily injury (as defined in section 1365 of Title 18) to, or places in jeopardy the life of, any person," in which case the statutory maximum increases to 20 years of imprisonment, § 1324(a)(1)(B)(iii). This "serious bodily injury" aggravator is an element of a aggravated offense and, as such, must be alleged in the indictment and proved beyond a reasonable doubt. *See United States v. Williams*, 449 F.3d 635, 644–45 (5th Cir. 2006) (citing *Apprendi v. United States*, 530 U.S. 460 (2000)). For ease of reference, we will refer to this aggravated offense as "conspiracy to commit aggravated alien transporting."

Alvarado-Casas argues that his conviction for conspiracy to commit aggravated alien transporting lacks an adequate factual basis, reasoning that (1) the offense requires proof that he personally and directly caused serious bodily injury to, or placed in jeopardy the life of, any person, and (2) the factual basis statement made by the government at the rearraignment hearing establishes that Patricio Rebollar, the driver of the truck, and not Alvarado-Casas, the ringleader

of the alien trafficking operation, caused the serious bodily injury to, and placed in jeopardy the lives of, the aliens involved.[4]   Alvarado-Casas points out that unlike most federal bodily injury and death enhancements, which are triggered if bodily injury or death "results" from the offense,[5] the enhancement provision at issue here is triggered only if "*the person*," the specific defendant whose guilt is at issue, "*causes* serious bodily injury . . . to, or places in jeopardy the life of, any person," § 1324(a)(1)(B)(iii) (emphasis added).   As evidence that this is a distinction with a difference, Alvarado-Casas contrasts § 1324(a)(1)(B)(iii) to § 1324(a)(1)(B)(iv), which provides that "*a violation . . . resulting in* the death of any person [shall] be punished by death or imprisoned for any term of years or for life." It is reasonable to infer from the difference in wording of these parallel provisions of the same statute, he contends, that Congress intended for criminal liability to attach under § 1324(a)(1)(B)(iii) only where a defendant personally and directly causes serious bodily injury to, or places in jeopardy the life of, another person. The government responds that the offenses require only proximate or legal cause.[6]

---

[4] Alvarado-Casas initially argued that the factual basis statement did not establish that anyone caused another person serious bodily injury during and in relation to the offense, but later conceded this point during oral argument.

[5] *See* 18 U.S.C. § 43(b)(3)–(4); 18 U.S.C. § 115(b)(1)(B)(iii)–(iv); 18 U.S.C. § 117(a)(2); 18 U.S.C. § 241; 18 U.S.C. § 242; 18 U.S.C. § 245(b); 18 U.S.C. § 247(d)(1)–(2); 18 U.S.C. § 248(b); 18 U.S.C. § 351(b); 18 U.S.C. § 670(c)(1); 18 U.S.C. § 844(d); 18 U.S.C. § 924(c)(5)(B); 18 U.S.C. § 1038(a)(1)(B)–(C); 18 U.S.C. § 1091(b)(1); 18 U.S.C. § 1347(a); 18 U.S.C. § 1365(a)(3); 18 U.S.C. § 1389(a); 18 U.S.C. § 1581(a); 18 U.S.C. § 1584(a); 18 U.S.C. § 1589(d); 18 U.S.C. § 1590(a); 18 U.S.C. § 1751(b), (d); 18 U.S.C. § 1752(b)(1)(B); 18 U.S.C. § 1864(b)(1)–(3); 18 U.S.C. § 1952(a)(3)(B); 18 U.S.C. § 1958(a); 18 U.S.C. § 2113(e); 18 U.S.C. § 2119(2)–(3); 18 U.S.C. § 2155(a); 18 U.S.C. § 2237(b)(2)–(3); 18 U.S.C. § 2281(a)(1); 18 U.S.C. § 2291(d); 18 U.S.C. § 2332a(a)–(b); 18 U.S.C. § 2332b(c)(1)(a); 18 U.S.C. § 2340A(a); 18 U.S.C. § 2441(a); 21 U.S.C. § 841(b)(1); 21 U.S.C. § 960(b)(1)–(3).

[6] The government argues, in the alternative, that it was not necessary to charge and prove that Alvarado-Casas personally caused serious bodily injury because, under *Pinkerton v. United States*, 328 U.S. 640 (1946), he is liable for the reasonably foreseeable acts of his co-conspirators.   But *Pinkerton* liability arises only when a conspirator is charged with a substantive offense arising from the actions of a co-conspirator, not where, as here, a conspirator is charged solely with conspiracy. *United States v. Armstrong*, 619 F.3d 380, 387

No. 12-40295

Alvarado-Casas may challenge the factual basis underlying his guilty plea notwithstanding his unconditional appeal waiver, *United States v. Baymon*, 312 F.3d 725, 727 (5th Cir. 2002) ("[E]ven if there is an unconditional plea of guilty or a waiver of appeal provision in a plea agreement, this Court has the power to review if the factual basis for the plea fails to establish an element of the offense which the defendant pled guilty to."), but because he raises this issue for the first time on appeal, our review is for plain error, *United States v. London*, 568 F.3d 553, 558 (5th Cir. 2009). More specifically, to prevail on this claim, Alvarado-Casas must show that (1) the district court erred in accepting his guilty plea without a factual basis, (2) the error was plain, (3) there is a reasonable probability that but for the error, he would not have pleaded guilty, and (4) the error seriously affected the fairness, integrity, or public reputation of the proceedings. *Id.* at 558–59 (citing *United States v. Dominguez Benitez*, 542 U.S. 74 (2004)).

An error is plain, in this context, if it is "clear or obvious" what the government must prove to establish the offense, and, notwithstanding that clarity, the district court accepts a defendant's guilty plea without an adequate factual basis. *United States v. Garcia-Paulin*, 627 F.3d 127, 132 (5th Cir. 2010); *see also United States v. Caraballo-Rodriguez*, 480 F.3d 62, 70 (1st Cir. 2007) (explaining that factual basis error is plain if the defendant's proposed interpretation "is compelled by the language of the statute itself, construction

---

(5th Cir. 2010) (confirming that "*Pinkerton* liability attaches only to substantive crimes"); Fifth Circuit Pattern Jury Instructions (Criminal Cases) § 2.22 (2012). In order to trigger *Pinkerton* liability in this case, the government would have needed to charge Alvarado-Casas with a substantive count of aggravated alien transporting, under § 1324(a)(1)(A)(ii) and (a)(1)(B)(iii), and proffer at rearraignment that Alvarado-Casas, as a conspirator, was liable for the serious bodily injury directly caused by Rebollar's reckless driving. *See United States v. Bonetti*, 277 F.3d 441, 447 (4th Cir. 2002) (affirming jury trial conviction, under *Pinkerton*, where the prosecution charged the defendant with a substantive count of harboring an unlawful alien, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), and then presented sufficient evidence that the defendant, as a conspirator, was liable for the serious bodily injury directly caused by his wife).

of the statute in light of the common law, or binding judicial construction of the statute") (emphasis omitted).  Conversely, if a defendant's factual basis challenge is "novel" or "not entirely clear under existing authority," *United States v. Trejo*, 610 F.3d 308, 319 (5th Cir. 2010), or, put differently, if the district court's factual basis finding is "subject to reasonable dispute," *United States v. Broussard*, 669 F.3d 537, 550–51 (5th Cir. 2012), a district court's error in accepting the guilty plea is not plain.

We perceive no plain error in the district court's acceptance of Alvarado-Casas's sworn statement of guilt, as his proposed interpretation of § 1324(a)(1)(B)(iii) is not compelled by the plain language of the statute or a binding judicial construction of it.  Admittedly, by its terms, § 1324(a)(1)(B)(iii) appears to limit liability for causing serious bodily injury to the specific defendant whose guilt is at issue. *See* discussion *supra* pp. 5–6.  But even if we were compelled by the language of § 1324(a)(1)(B)(iii) to conclude that the offense has a personal causation component, that would not resolve the issue before us; we would still need to decide the degree of causation required (*e.g.*, direct causation, but-for causation, substantial-factor causation, command causation, proximate causation, etc.), an issue not resolved by the plain language of the statute or our construction hitherto of it.  We have twice affirmed convictions for aggravated alien transporting, but in each instance, the defendant was personally involved in the accident that resulted in serious bodily injury so we had no cause to decide the degree-of-causation issue presented here. *See United States v. De Jesus-Ojeda*, 515 F.3d 434, 444–45 (5th Cir. 2008) (affirming jury trial conviction for aggravated alien transporting where the defendant "personally placed [unlawful aliens] on and in an inner tube and pulled them across the Rio Grande at night in water over their heads"); *United States v. Garcia-Flores*, 207 F. App'x 397, 400–01 (5th Cir. 2006) (per curiam) (affirming guilty plea conviction for aggravated alien transporting, on plain error

review, where the defendant, while unlawfully transporting unlawful aliens in his truck, got into a car accident). These decisions establish that direct, personal causation satisfies the causation element of the statute, but they do not foreclose the possibility that the causation element could be satisfied by a showing of other, more remote degrees of causation, such as proximate causation or command causation.[7] *See Trejo*, 610 F.3d at 320 (noting that "although [the cases cited by the defendant] rely on evidence beyond the bare drug transportation itself, none of them stand for the proposition that such evidence is required as a matter of law").

Because neither the plain language of the statute nor our interpretation of it compels the conclusion that Alvarado-Casas must have been the direct cause of the serious bodily injury to be criminally liable under § 1324(a)(1)(B)(iii), we conclude that the district court's error in accepting Alvarado-Casas's plea, if any, was not plain. *See Broussard*, 669 F.3d at 550 ("[A]s we have never addressed whether obtaining a phone number and having conversations with a minor about meeting for illicit sexual activity constitutes a substantial step toward persuading a minor to engage in illicit sexual activity under § 2422(b)—nor has any intervening decision clarified the issue—any error on the

---

[7] Alvarado-Casas suggests that because we have yet to uphold a conviction for aggravated alien smuggling against a factual basis challenge where, as here, the defendant was not the direct or immediate causer of the serious bodily injury, the district court's error is clear and obvious, citing *Garcia-Paulin*. 627 F.3d at 132 (holding that district court's acceptance of a defendant's guilty plea to bringing an unlawful alien into the United States, under 8 U.S.C. § 1324(a)(1)(A)(I), was plain error in part because the defendant did not accompany or arrange to have a person accompany the alien across the border, and "[w]e have found no case where a defendant has been convicted under clause (I) of this statute for 'bringing' an alien into the United States except where the defendant accompanied or arranged to have the alien accompanied (as in a smuggling operation) across the border"). Although the absence of precedent is relevant to our plainness analysis, *id.*, it is not dispositive. Were it, the plainness of an error could depend more on the frequency of prosecution than the clarity of the issue presented. We reiterate that factual basis error is not plain unless the defendant's proposed interpretation is compelled by the plain language of the statute or a binding judicial construction of it.

district court's part in accepting Broussard's plea on the factual basis established by the evidence could not be plain."); *id.* at 550–51 ("[A]ny error the district court may have committed was not plain as we have never addressed whether an alleged violation of § 14:81.3 of the Louisiana Revised Statutes constituted 'sexual activity for which any person can be charged with a criminal offense' under § 2422(b)."); *Trejo*, 610 F.3d at 319 ("Variously describing Trejo's claim as 'novel' and 'not entirely clear under the existing case authority,' we doom the case for plain error."); *see also Caraballo-Rodriguez*, 480 F.3d at 70–76 (concluding that any error could not be plain because the defendant's proposed reading of the statute was not compelled by its plain language or a binding judicial construction of it).

## II.  Voluntariness

In addition to determining whether a factual basis exists for the plea, courts are required by Rule 11 to advise the defendant of "the nature of each charge to which the defendant is pleading," Fed. R. Crim. P. 11(b)(1)(G), the "maximum possible penalty, including imprisonment," Fed. R. Crim. P. 11(b)(1)(H), and "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence," Fed. R. Crim. P. 11(b)(1)(N).

Alvarado-Casas submits that the district court erred by (1) misadvising him of the nature of the charge to which he was pleading guilty, in violation of Rule 11(b)(1)(G); (2) misadvising him of the statutory maximum sentence for that offense, in violation of Rule 11(b)(1)(H); and (3) failing to ensure that he understood the consequences of waiving his right to appeal, in violation of Rule 11(b)(1)(N).  Although his appeal waiver does not bar our review of his claims of Rule 11 error, because Alvarado-Casas raises these claims for the first time on appeal, review is for plain error. *United States v. Oliver*, 630 F.3d 397, 411 (5th Cir. 2011).  More specifically, to prevail on his claim that his guilty plea was involuntary, Alvarado-Casas must show that (1) the district court committed

No. 12-40295

Rule 11 error, (2) the error was plain, (3) there is a reasonable probability that but for the error, he would not have pleaded guilty, and (4) the error seriously affected the fairness, integrity, or public reputation of the proceedings. *Id.* at 411–12.

### A.    Nature of the Offense

At the rearraignment hearing, the district court described the elements of conspiracy to commit aggravated alien transporting, but did not specify that to be found guilty of that crime, Alvarado-Casas personally and directly must have caused the serious bodily injury to, or placed in jeopardy the life of, another person.  As explained previously, if this was error, it was not plain error, and thus does not entitle Alvarado-Casas to relief on plain error review. *See* discussion *supra* pp. 8–9.

### B.    Statutory Maximum

The district court misadvised Alvarado-Casas that he faced a maximum of ten years of imprisonment, when, in fact, conspiracy to commit aggravated alien transporting carries a statutory maximum of twenty years of imprisonment, § 1324(a)(1)(B)(iii).  The error was compounded, Alvarado-Casas argues, by defense counsel's "promise[] that the sentence impose[d] by the court w[ould] not be more than 10 years."  Alvarado-Casas asserts that if he had known that he faced a statutory maximum of 20 years of imprisonment, he would not have pleaded guilty.  The government's principal response is that the error, if any, had no effect on Alvarado-Casas's decision to plead guilty.  As evidence, the government points out that (1) the PSR, which Alvarado-Casas reviewed and discussed with counsel before sentencing, correctly stated that he faced a statutory maximum of 20 years of imprisonment, (2) Alvarado-Casas did not object to that aspect the PSR, and (3) Alvarado-Casas did not immediately object to the sentence imposed, even though it exceeded the 10-year maximum he purportedly believed was the extent of his sentencing exposure.

11

We agree with Alvarado-Casas that it was error for the district court to inform him that he faced only a ten-year maximum sentence, and that the error was clear and obvious. *See United States v. Still*, 102 F.3d 118, 123 (5th Cir. 1996) ("[A] plain reading of Rule 11 requires the district court to inform the defendant of the . . . maximum possible penalty applicable to each count to which the defendant is pleading guilty."); *see also United States v. Toruno*, 229 F. App'x 296, 297 (5th Cir. 2007) (per curiam) ("The parties do not dispute that the district court incorrectly admonished [the defendant] regarding the maximum term of imprisonment and that the error was clear and obvious.").

We disagree, however, that Alvarado-Casas has carried his burden of establishing a reasonable probability that but for the error, he would not have pleaded guilty.  Alvarado-Casas does not point to record evidence that he was prepared and willing to go to trial, *United States v. Molina*, 469 F.3d 408, 412 (5th Cir. 2006) (affirming guilty plea conviction, despite Rule 11 error, because the defendant "d[id] not direct this court to any portion of the record supporting the proposition that the maximum sentence for count three affected his plea decision"), and the PSR, which he acknowledged reviewing, corrected any misapprehensions he may have had about his sentencing exposure, *United States v. Vasquez-Bernal*, 197 F.3d 169, 171 (5th Cir. 1999) (affirming guilty plea conviction, despite Rule 11 error, in part because "the presentence report specifically detailed the punishment range applicable to [the defendant]'s crime").

It is true, as Alvarado-Casas points out, that "the 190-month prison sentence actually imposed is 70 months greater than the 10-year maximum possible prison sentence of which his counsel and the district court advised him," and that one consideration in our inquiry is the extent to which a defendant's perceived sentencing exposure diverges from his true sentencing exposure, *United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996). But it oversimplifies the matter to focus on this discrepancy alone, and ignore other factors that

loomed large in the decisional calculus.  In exchange for his guilty plea, Alvarado-Casas received three acceptance-of-responsibility points, which lowered his Guidelines range from 262–327 months to 188–235 months, a decrease of six to seven years at both ends.  Moreover, as part of the plea agreement, the government agreed to dismiss twelve substantive counts of aggravated alien transporting, each of which carried a sentencing exposure of twenty years of imprisonment.  Thus, even if Alvarado-Casas were prepared to go to trial, it is not reasonably probable that he would have declined the plea deal and exposed himself to a higher potential Guidelines range and maximum sentence. *See Caraballo-Rodriguez*, 480 F.3d at 76 (holding that even if the district court erred in accepting defendant's guilty plea without a factual basis, there was no reasonable probability that but for the alleged error the defendant would not have pleaded guilty, in light of the "extremely favorable plea deal" that was "structured to find a significantly less serious offense to which he could plead").  Our conclusion is buttressed by Alvarado-Casas's decision not to move under Rule 11(d)(2) to withdraw his plea after the PSR made him aware of his true sentencing exposure.

In summary, although Alvarado-Casas can show clear error in this regard, it does not entitle him to relief because he has not satisfied his burden of showing that but for the error, he would not have pleaded guilty. *See Molina*, 469 F.3d at 412; *Vasquez-Bernal*, 197 F.3d at 171; *Caraballo-Rodriguez*, 480 F.3d at 76.

### C.    Appeal Waiver

At the rearraignment hearing, the district court did not specifically focus Alvarado-Casas on, or determine that he understood, the appeal waiver provision.  The court did, however, confirm at both rearraignment and sentencing that Alvarado-Casas reviewed the plea agreement with counsel, understood its terms, and signed it voluntarily.  That is sufficient. *United States*

*v. Portillo*, 18 F.3d 290, 293 (5th Cir. 1994) ("[W]hen the record of the Rule 11 hearing clearly indicates that a defendant has read and understands his plea agreement, and that he raised no question regarding a waiver-of-appeal provision, the defendant will be held to the bargain to which he agreed, regardless of whether the court specifically admonished him concerning the waiver of appeal."). Accordingly, we perceive no error, plain or otherwise.

## III. Double counting

The Sentencing Guidelines call for a two-level adjustment to a defendant's offense level if the defendant "smuggled, transported, or harbored a minor who was unaccompanied by the minor's parent or grandparent," U.S.S.G. § 2L1.1(b)(4) (the "transportation of a minor adjustment"), and a separate two-level adjustment if the defendant "used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense," U.S.S.G. § 3B1.4 (the "use of a minor adjustment"). The commentary to the use of a minor adjustment instructs that the adjustment should not be applied "if the Chapter Two offense guideline incorporates this factor." U.S.S.G. § 3B1.4 cmt. n.2.

Alvarado-Casas argues that because his transportation of a minor adjustment, a Chapter Two adjustment, incorporates the involvement of a minor, the application of both enhancements constituted impermissible double counting. In response, the government invokes the appeal waiver provision of Alvarado-Casas's plea agreement, and argues that it bars his sentencing challenge.

If invoked by the government, an appeal waiver bars a defendant from challenging his sentence if "the waiver was knowing and voluntary" and it "applies to the circumstances at hand, based on the plain language of the agreement." *United States v. Bond*, 414 F.3d 542, 544 (5th Cir. 2005). The appeal waiver in Alvarado-Casas's plea agreement provides, in pertinent part:

"The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal only (a) a sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines which had not been requested by the United States." The plain language of the provision covers this challenge to his sentence, which was below the statutory maximum and not the product of an upward departure. Moreover, "[b]ecause [Alvarado-Casas] indicated that he read and understood the agreement, which includes an explicit, unambiguous waiver of appeal, the waiver was both knowing and voluntary." *Id.*  Accordingly, the appeal waiver bars Alvarado-Casas's sentencing challenge.

## CONCLUSION

For the foregoing reasons, we conclude that the district court's acceptance of Alvarado-Casas's guilty plea, if error, was not plain error; the district court's admonishment regarding Alvarado-Casas's sentencing exposure, though clear error, did not materially affect his decision to plead guilty; and the appeal waiver bars Alvarado-Casas's challenge to his sentence.  AFFIRMED.