Revised July 26, 2002

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No.  01-50737

UNITED STATES OF AMERICA,                                        Plaintiff-Appellee,

versus

PEDRO REYES,                                                          Defendant-Appellant.

Appeal from the United States District Court
for the Western District of Texas

July 25, 2002

Before DAVIS, DeMOSS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

The opinion reported at No. 01-50737, 2002 WL 1290864 (5th Cir. June 12, 2002), is

withdrawn and the following opinion is substituted therefor.

Pedro Reyes ("Reyes") appeals from his convictions for importing marijuana and for

possessing marijuana with intent to distribute on the grounds that his guilty plea was invalid because

the district court failed to comply with Rule 11 of the Federal Rules of Criminal Procedure.  For the

following reasons, we hereby vacate his convictions and sentence and remand for further proceedings

consistent with this opinion.

## FACTUAL AND PROCEDURAL HISTORY

Reyes was charged in December of 2000 by an indictment with one count of importing 50 kilograms or more of marijuana into the United States, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(3), and one count of possessing with intent to distribute 50 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). In May of 2001, Reyes, then 75 years old, pled guilty to the indictment as charged. He did so without the benefit of a plea agreement. The court sentenced him to concurrent terms of 151 months of imprisonment and three years of supervised release, and ordered him to pay a $200 special assessment.

According to the "factual basis" that the court elicited from the prosecutor, Reyes was stopped at a border checkpoint while driving a small truck with 110 bundles of marijuana weighing 77.9 kilograms concealed in a false compartment located in the bed of the truck. He was subsequently arrested and advised of his constitutional rights, which he acknowledged and waived. Reyes denied knowledge of the marijuana. He claimed that he traveled to Mexico to visit his girlfriend and that he borrowed the truck from his friend.

At the rearraignment, several defendants pled simultaneously. Reyes was represented by the Federal Public Defender (FPD) in the district court, and his counsel told the court that Reyes "assures me that he had no knowledge of the marijuana" hidden in the truck and "will not be accepting responsibility as to his knowledge," but that "we would like to plead [Reyes] guilty if we could." Throughout the proceeding, Reyes was equivocal as to his desire to plead guilty. He attempted to plead guilty while still denying that he knew there was marijuana in the truck. After the district court

2

advised Reyes that he could not plead guilty without admitting that he knew the marijuana was in the truck, Reyes finally said, "I plead guilty with knowledge." After addressing other persons in the courtroom, the district court again told Reyes, "If you plead guilty, the charge is that you knew that it was there." Reyes responded that even though he would plead guilty, he wanted to send a letter to the judge explaining the facts.[1] Reyes also denied some details of the factual basis and hesitated and laughed before admitting that the rest of it was true. Later, Reyes said that he wanted to plead not guilty because he "never had it in my possession," but then changed his plea back to guilty. The court said it would hear from Reyes again after hearing from the other defendants. When asked for the last time how he wanted to plead, Reyes said "I pled guilty already, Your Honor." The court then accepted the plea.

## DISCUSSION

Through the FPD,[2] Reyes appeals his convictions on grounds that his guilty plea was invalid because the district court did not adequately comply with Federal Rule of Criminal Procedure 11. Reyes asserts three violations of Rule 11(c)(1). First, he contends that the district court failed to advise him fully as to the nature of the charge. Second, he asserts that the court failed to advise him adequately of the effects of a term of supervised release. Finally, he argues that the court failed to advise him that it was required to consider the sentencing guidelines and could depart from the

---

[1] The Government asserts in its brief on appeal that Reyes never sent the letter, and the record does not contradict that assertion.

[2] Reyes also filed a pro se notice of appeal asserting that his sentence is excessive. The excessive-sentence issue is not briefed and is therefore not before the court. See Yohey v. Collins, 985 F.2d 222, 225 (5th Cir. 1993) (issues not briefed are abandoned); American States Ins. Co. v. Bailey, 133 F.3d 363, 372 (5th Cir. 1998) (failure to provide legal or factual analysis of issue results in waiver).

3

guidelines only in some circumstances.

I.

Because a guilty plea involves the waiver of several constitutional rights, it must be made intelligently and voluntarily. Boykin v. Alabama, 395 U.S. 238, 242-44 (1969). Rule 11 ensures that a guilty plea is knowing and voluntary by requiring the district court to follow certain procedures before accepting such a plea.[3] Reyes failed to raise a Rule 11 challenge in the district court. As such, we apply a plain error-analysis. United States v. Vonn, 122 S. Ct. 1043, 1046 (2002). Under this analysis, Reyes has the burden to show (1) there is an error, (2) that is clear and obvious, and (3) that affects his substantial rights. United States v. Marek, 238 F.3d 310, 315 (5th Cir. 2001). "If these factors are established, the decision to correct the forfeited error still lies within our sound discretion, which we will not exercise unless the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

To evaluate the effect of any error on substantial rights, we determine whether "the district court's flawed compliance with . . . Rule 11 . . . may reasonably be viewed as having been a material factor affecting [the defendant]'s decision to plead guilty." United States v. Johnson, 1 F.3d 296, 302 (5th Cir. 1993). "[W]e focus on whether the defendant's knowledge and comprehension of the full and correct information would have been likely to affect his willingness to plead guilty." Id.

---

[3]Rule 11(c)(1) provides, in pertinent part, that before accepting a guilty plea, the district court must

> inform the defendant of, and determine that the defendant understands, . . . the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, [and] the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances.

FED. R. CRIM. P. 11(c)(1).

4

(citation and internal quotations omitted).  In making this determination, we may consult the whole record on appeal.  Vonn, 122 S. Ct. at 1046; Johnson, 1 F.3d at 302.

II.

Reyes contends that the district court failed to explain the nature of the charges because the court did not expressly advise him that the charges against him involved more than 50 kilograms of marijuana.  "Rule 11's requirement that defendants understand the 'nature of the charge' against them refers to the elements of the offense."  United States v. Lujano-Perez, 274 F.3d 219, 224 (5th Cir. 2001).  "Neither Rule 11 nor the case law specifies the minimum that the district court must do to inform the defendant . . . of the nature of the charge."  United States v. Reyna, 130 F.3d 104, 110 (5th Cir. 1997) (internal quotation and citation omitted).  Rather, "the court must have a colloquy with the defendant that would lead a reasonable person to believe that the defendant understood the nature of the charge."  Id.

The elements of possession of marijuana with the intent to distribute it under § 841(a)(1) are that "the defendant had (1) knowing (2) possession of the illicit substance (3) with intent to distribute it."  United States v. Martinez-Mercado, 888 F.2d 1484, 1491 (5th Cir. 1989).  The elements of the crime of importation under § 952(a) are only that the defendant "played a role in bringing the mari[j]uana into the United States from a foreign country."  Id.  Under Apprendi v. New Jersey, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. 446, 490 (2000).  This Court has held that if the government seeks enhanced penalties for a federal drug trafficking offense based on the amount of drugs, the specific drug quantity is an element of the crime, i.e., "the quantity must be stated in the indictment and submitted to a jury for

5

a finding of proof beyond a reasonable doubt." United States v. Virgen-Moreno, 265 F.3d 276, 297 (5th Cir. 2001) (citation and internal quotations omitted).

The court told Reyes that he was "charged with two charges. One is importing marijuana and the other one is possessing it with intent to distribute it or give it or sell it to someone else." The court asked Reyes if he understood both charges, and Reyes said that he did. Reyes showed he was aware of the element of bringing the marijuana into the United States. The court explained what was meant by intent to distribute. The court specifically discussed with Reyes the scienter element of both crimes and explained in detail that Reyes could not plead guilty without admitting that he knew he was carrying marijuana.

In the context of discussing the maximum possible penalties, the court explained that more than 50 kilograms of marijuana was involved.[4] When the court asked Reyes whether he understood the punishment that he could receive, Reyes did not respond in the affirmative; instead, he stated, "Your Honor, you will have to repeat the proposed sentenced [sic] upon me by talking a little bit louder." The district court did not mention the drug quantity again when repeating the possible penalties.

Even if the district court erred in failing to give a clearer explanation of the drug quantity involved in this case, this did not affect Reyes's substantial rights. Although the indictment was not read, there is evidence indicating that Reyes understood the nature of the charges. Cf. Virgen-Moreno, 265 F.3d at 297 (reviewing cases and observing that "in every case where we have found the failure to explain the nature of the charge to be harmless, there has been evidence, other than

---

[4]Specifically, the district court stated: "Mr. Reyes, the law says that for these two charges, that there was more than 50 kilograms of marijuana, so that you can get up to 20 years in jail for each one of these charges, a fine of up to $1,000,000 . . . ."

6

recitation of the factual basis, indicating that the defendant understood the nature of the charge"). The indictment charged the correct drug quantity. Reyes acknowledged that he had seen a copy of the charges against him, that somebody had read the charges to him and explained the charges, and that he understood that he was pleading guilty to those charges. Further, during the Government's summary of the factual basis, the Government explained that the crime involved "171.5 pounds, or 77.9 kilos." Thus, Reyes has failed to meet his plain error burden.

## III.

Reyes contends that the court failed to advise him of the effect and operation of supervised release. The district court told Reyes: "When you get out, for three years, if you go to jail, for three years, you are going to have to follow certain rules and regulations, and if you don't do what I tell you, I am going to send you back for more time." To satisfy Rule 11's required explanation of the effect of supervised release, the district court should inform the defendant "that a term of supervised release is imposed in addition to any sentence of imprisonment and that a violation of the conditions of supervised release can subject the defendant to imprisonment for the entire term of supervised release, without credit for any time already served on the term of supervised release." United States v. Tuangmaneeratmun, 925 F.2d 797, 803 (5th Cir. 1991). Thus, the court did not advise him of any specific amount of additional time he might face in the event that he should violate a condition of supervised release. Nor did the court inform Reyes that he would not receive any credit for time already served under the term of supervised release. This failure constitutes clear error.

Because the district court failed to explain the effect of the supervised release, we must determine whether the error affected Reyes's substantial rights. In Reyes's "worst-case scenario," the 151 month term of imprisonment combined with the three years of supervised release and the

7

two-year period of incarceration that could be imposed after revocation of his supervised release would not exceed the twenty-year maximum prison sentence of which Reyes was advised.[5]  See United States v. Cuevas-Andrade, 232 F.3d 440, 444 (5th Cir. 2000) (holding that the district court's failure to explain the effect of supervised release was harmless where the maximum term of incarceration under the actual sentence of imprisonment and supervised release (less than six years) as well as his worst-case scenario (less than nine years) was less than the maximum term of incarceration (twenty years) allowed by law), cert. denied, 121 S. Ct. 1748 (2001).   Reyes understood that he could have received a maximum prison term of twenty years, and that term exceeds his "worst-case scenario."  Because the conditions of supervised release, as opposed to twenty years of imprisonment, are not so onerous that they would deter Reyes from pleading guilty, he has failed to meet his plain error burden.

IV.

The district court made no mention of the sentencing guidelines, the requirement that the court consider them, or the authority of the court to depart from them in limited circumstances.  The government concedes that the court did not advise Reyes of the sentencing guidelines before accepting his guilty plea, as required by Rule 11(c)(1). We must consider, therefore, whether this clear error affected Reyes's substantial rights.

In United States v. Vasquez-Bernal, this Court held that the district court's failure to comply with Rule 11 by failing to inform the defendant of the statutory punishment range that he faced as a consequence of his crime did not affect the defendant's substantial rights.  197 F.3d 169, 171 (5th

---

[5]See 18 U.S.C. § 3583 (e)(3) (maximum term for violation of supervised release for Class C felony is two years); see also 18 U.S.C. § 3559(a)(3) (Reyes's crime is Class C felony because the maximum term of imprisonment is between 10 and 25 years).

Cir. 1999). We observed that the defendant was informed of the punishment range when he received his PSR, that the defendant's sentence was at the bottom of the guideline range, and that there was no proof, or even an allegation, "that he would not have pled guilty had he been personally informed of the punishment range for his crime." Id. at 171. We concluded that in light of these circumstances, "it would be absurd to find that [the defendant] was unaware of the consequences of his crime or that this alleged lack of knowledge actually affected his decision to plead guilty." Id. Although in this case we are presented with post-plea circumstances similar to those in Vasquez-Bernal, there is one glaring difference: Reyes argues that he pleaded guilty "unaware that the sentencing guidelines would likely call for a sentence of imprisonment," that he "likely would have made a different decision" had he been informed of the guidelines and other Rule 11 factors, and that the court's errors materially affected his decision to plead guilty, and he has offered proof to support this argument.

After considering the circumstances surrounding this plea hearing, we find that Reyes's willingness to plead guilty would likely have been affected by his knowledge that the district court must follow the sentencing guidelines and may only depart from those guidelines in limited circumstances. We are unable to find any basis in the record upon which we could reasonably conclude that Reyes was aware that "the court is required to consider any applicable sentencing guidelines, but may depart from those guidelines under some circumstances." FED. R. CRIM. P. 11(c)(1). Even at sentencing, Reyes expressed the hope that he might receive a very short sentence that he could serve in a halfway house. Further, the district court also may inadvertently have given Reyes false hope by telling him "[w]hen you get out . . . *if you go to jail*" when explaining supervised release. (emphasis added). In addition, Reyes's advanced age, his reticence about pleading guilty

9

to the charged offenses as evidenced by the FPD's remarks to the court at the beginning of rearraignment, and his repeated assertion that he did not know there was marijuana in the truck, suggest that Reyes might have risked a trial rather than plead guilty had he been informed of the operation of the guidelines. For a 75-year-old man, there may be no significant difference between a sentence of over twelve and a half years on a guilty-plea and the risk of a twenty-year sentence on a jury conviction. Thus, we conclude that the district court's error affected Reyes's substantial rights. Accordingly, on this record, because the district court failed to comply with Rule 11, the rule meant to ensure that a guilty plea is knowing and voluntary, we vacate Reyes's guilty plea and remand for further proceedings.

## CONCLUSION

Reyes's convictions and sentence are vacated and remanded for further proceedings consistent with this opinion.

VACATED and REMANDED.