**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

No. 17-50415

United States Court of Appeals
Fifth Circuit

**FILED**
March 20, 2019

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CHARLES SEDBERRY, also known as Smurf, also known as Charles McDonald-Sedberry, also known as Charles McDonald,

Defendant - Appellant

------------------------------------------------
consolidated with
17-50434
------------------------------------------------

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

CHARLES MCDONALD SEDBERRY, also known as Smurf, also known as Charles McDonald-Sedberry, also known as Charles McDonald,

Defendant - Appellant

Appeals from the United States District Court
for the Western District of Texas
USDC No. 5:14-CR-916-11
USDC No. 5:16-CR-171-1

No. 17-50415

Before CLEMENT, GRAVES, and OLDHAM, Circuit Judges.

PER CURIAM:*

In these consolidated cases, Defendant-Appellant Charles Sedberry pleaded guilty to conspiracy to possess with intent to distribute 1,000 kilograms or more of marijuana and possession with intent to distribute five grams or more of methamphetamine. Sedberry appeals his convictions, alleging the district court violated Federal Rule of Criminal Procedure 11 during his rearraignment hearing, thereby rendering his pleas unknowing and involuntary. He requests his guilty pleas and sentences be vacated and his cases remanded to a different district court judge for resentencing. After careful review, we find no reversible error and affirm.

## I. BACKGROUND

### A. Pretrial

In case 17-50415, Sedberry was indicted by a grand jury on three marijuana-related conspiracy charges and was released on an unsecured bond. While on pretrial release, Sedberry was charged in state court with the offense of possession of a controlled substance (methamphetamine). Shortly before the deadline for a plea agreement in Sedberry's marijuana case, the Government elevated the state methamphetamine charge and indicted Sedberry in case 17-50434 for possession with intent to distribute five or more grams of methamphetamine. Given the changed circumstances, Sedberry moved for a continuance of the trial and pretrial deadlines in the marijuana case to allow him the possibility to plead jointly to both cases. Sedberry's motion explained that a joint plea would reduce his criminal history level as to each offense and

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

allow Sedberry the opportunity for concurrent sentences. Sedberry reiterated his concerns about concurrent sentences when he later filed a motion for reconsideration of his release on bond.

Some months later, Sedberry and the Government executed plea agreements resolving both cases. As relevant to this appeal, the plea agreement in the methamphetamine case contained the following provision:

> Defendant understands that the Court is not obligated to grant reduction[s] for acceptance of responsibility or any other request. Defendant understands that the sentence to be imposed is within the complete discretion of the Court. Defendant will not be permitted to withdraw his agreement to plead guilty because of the Court's decision in imposing such sentence. . . .
> Additionally, if and only if the Defendant pleads guilty to this case at the same time he pleads guilty in cause number [17-50415, the marijuana case], the United States agrees not to oppose the sentences running concurrent to one another.

A rearraignment hearing was then set to allow Sedberry to enter guilty pleas in both cases according to his written plea agreements. A few days before the hearing, the Government filed the executed plea agreements with the court under seal.

**B. Rearraignment**

At the rearraignment hearing, the district court conducted the plea colloquy. The district court confirmed Sedberry wanted to plead guilty to both charges and asked if he understood the charges against him. After Sedberry confirmed he understood, the district court then asked if Sedberry had made the decision to sign the "papers" voluntarily, which Sedberry affirmed. The district court then verified Sedberry's attorneys had advised him of his options, the likelihood of success at trial, and the different consequences of taking a plea versus going to trial. Next, the district court explained the minimum and

maximum penalties possible for the marijuana and the methamphetamine charges, including that the sentences could run consecutively to each other.

At that point, the district court stated to the Government, "My guess is, Mr. Leachman, that the government is not -- if he accepts responsibility and there's no problem between now and the time of sentencing, that the government will not have any objection to this running concurrently?" The Government responded, "That's correct, Your Honor. In fact, the plea agreement in the [17-50434] case number at the bottom of item number 8 reflects that we will not oppose those running concurrent to one another." The district court then addressed Sedberry, stating,

> Now, Mr. Sedberry, on the other hand, if you try to escape from custody of the marshals between now and the punishment date and I decide to reject that part of the plea agreement and run the matters consecutively, then, of course, you can withdraw your plea, and we'll go back to square one. But as long as you do what you're supposed to do between now and the punishment date, then your punishment will be running concurrently. Do you understand that?

Sedberry responded in the affirmative.

The district court then went over the factual basis for each charge, and Sedberry confirmed the facts as stated were true and correct. The district court also explained that "those facts" did not make Sedberry legally guilty unless he entered a guilty plea, informing Sedberry if he wanted to change his mind he could still have a trial. Sedberry said he understood, and the district court then outlined the benefits of a plea deal along with the constitutional rights he was giving up in exchange for such benefits. Sedberry said he understood the rights he was giving up as explained by the district court. After confirming no one had forced, threatened, or paid Sedberry money to plead guilty, the district court found Sedberry to be legally competent and found he had received

effective assistance of counsel, had knowledge of the charges and punishment options in each case, and that a factual basis existed to support the guilty pleas. The district court further found the plea agreements to have been negotiated at arm's length. The district court then asked Sedberry how he pleaded and to each charge Sedberry pleaded guilty. The court accepted the guilty pleas, set a date for the joint sentencing hearing, and encouraged Sedberry to be on his best behavior with the Marshal Service in the meantime.

## C. Sentencing

Relying on the presentence report ("PSR") prepared by the United States Probation Office, the district court calculated Sedberry's sentencing range for both offenses per the United States Sentencing Guidelines ("U.S.S.G."), which resulted in a sentencing range of 360 months to life in prison. At the scheduled sentencing hearing, the district court overruled Sedberry's objections to the PSR and sentenced Sedberry to 180 months in prison for the marijuana case and five years of supervised release. In the methamphetamine case, the district court sentenced Sedberry to 60 months of imprisonment and five years of supervised release. The district court ordered that the sentences of imprisonment run consecutively for a total of twenty years' imprisonment, but the periods of supervised release were to run concurrently. The district court departed downwards from the recommended Guidelines range because it found the recommendation of thirty years to be excessive based on Sedberry's history and characteristics, as well as the proportionality of his behavior relative to the co-defendants in the marijuana case. However, the district court did not explain why it ordered the sentences to run consecutively. Sedberry did not object to his sentences at the hearing.

Sedberry timely filed his notices of appeal as to both judgments.

## II. DISCUSSION

Because a guilty plea involves the waiver of constitutional rights, it must be made knowingly and voluntarily. *United States v. Brown*, 328 F.3d 787, 789 (5th Cir. 2003) (citing *United States v. Reyes,* 300 F.3d 555, 558 (5th Cir. 2002)). Federal Rule of Criminal Procedure 11 requires a district court to follow certain procedures to ensure that a defendant's guilty plea is knowing and voluntary. *Id.* Where a defendant did not object to the errors before the district court, the court reviews for plain error. *United States v. Vonn*, 535 U.S. 55, 59 (2002).

A plain error is an error or defect not intentionally abandoned by the defendant that is "clear or obvious, rather than subject to reasonable dispute." *Puckett v. United States*, 556 U.S. 129, 135 (2009). If, in addition, the error affects the defendant's substantial rights, then the court may exercise its discretion to correct the error if it "seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1903 (2018). To make such a showing in a Rule 11 case, a defendant "must show a reasonable probability that, but for the error, he would not have entered the plea." *United States v. Dominguez Benitez*, 542 U.S. 74, 83 (2004). "A defendant must thus satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is sufficient to undermine confidence in the outcome of the proceeding." *Id.* (internal quotation marks omitted).

### A. Rule 11(b) and (c)(3) Violations

Sedberry argues the district court violated Rule 11(b)(1) by failing to inform him of and determine whether he understood the following: 1) the Government's right to use against him any statement made under oath in a prosecution for perjury, Rule 11(b)(1)(A); 2) Sedberry's right to plead not guilty or persist in his not-guilty plea, *id.* 11(b)(1)(B); 3) his right to be represented

by counsel at trial and every other stage of the proceeding, *id.* 11(b)(1)(D); 4) Sedberry's right to confront adverse witnesses, be protected from compelled self-incrimination, "testify and present evidence, and . . . compel the attendance of witnesses," *id.* 11(b)(1)(E); 5) the requirement that the district court "calculate the applicable sentencing-guideline range and [] consider that range, possible departures under the [U.S.S.G.], and other sentencing factors under 18 U.S.C. §3553(a)," *id.* 11(b)(1)(M); and 6) "the terms of any plea-agreement provision waiving the right to appeal or to collaterally attack the sentence," *id.* 11(b)(1)(N). Sedberry also contends the district court violated Rule 11(c)(3)(B) when it advised him that he could withdraw his guilty plea if the court imposed consecutive sentences rather than running them concurrently, as outlined in the plea agreements. *See* Rule 11(c)(3)(B) ("To the extent the plea agreement is of the type specified in Rule 11(c)(1)(B), the court must advise the defendant that the defendant has no right to withdraw the plea if the court does not follow the recommendation or request.").

As to the alleged Rule 11(b) violations, Sedberry does not provide much in the way of argument, while the Government, with citations to the record, contends that the district court essentially did advise Sedberry of his right to plead not guilty, his right to representation, and the rights Sedberry gave up by entering a guilty plea. *See United States v. Bachynsky*, 949 F.2d 722, 726 (5th Cir. 1991) ("A verbatim reading of Rule 11[] to the defendant is not required as long as the defendant understands the rights he forfeits by pleading guilty." (citing *United States v. Dayton,* 604 F.2d 931, 938 (5th Cir. 1979) (en banc))). After reviewing the record, we find it to be at least arguable that the district court complied with Rules 11(b)(1)(B), (D), and (E), and therefore we cannot say the district court committed clear error as to these alleged violations.

That leaves us with whether the district court clearly violated Rules 11(b)(1)(A), (M), (N), or 11(c)(3)(B). The Government does not argue that the district court informed Sedberry of the risks of perjury, of the district court's obligation to follow the U.S.S.G. in sentencing and only depart in certain situations, or that the district court ensured Sedberry understood the waiver provision in his plea agreements. Similarly, the Government does not contend the district court's statement that Sedberry could withdraw his plea if the district court imposed consecutive sentences was correct and complied with Rule 11. Nor could it, as the record is clear the district court did not cover the substance of Rules 11(b)(1)(A), (M), or (N), and incorrectly explained 11(c)(3)(B). Rather, as to all these violations, the Government argues they did not affect Sedberry's substantial rights. We turn now to whether there is a reasonable probability Sedberry would not have entered the guilty pleas but for these errors.

Sedberry argues *United States v. Amaya*, 111 F.3d 386 (5th Cir. 1997) and *United States v. Dolic*, 439 F. App'x 425 (5th Cir. 2011) (per curiam) support his argument that the Rule 11 violations at his rearraignment hearing created a reasonable probability that, but for these errors, Sedberry would not have pleaded guilty. In *Amaya*, the court asserted that "[a] situation in which a defendant is induced by deception, an unfulfillable promise, or misrepresentation to enter a plea of guilty does not meet the standard for voluntariness articulated by the Supreme Court." *Amaya*, 111 F.3d at 389. There, the defendant planned to plead guilty to one charge in exchange for the government dismissing another charge and refraining to prosecute him further for the conduct alleged in the indictment. *Id.* at 387. However, in the plea agreement the government reserved its right not to move for a downward

departure from the applicable Guidelines range pursuant to U.S.S.G. § 5K1.1.[1] *Id.* When defense counsel raised a concern that a new prosecutor might take over the case and refuse to file a § 5K.1 motion, the district court stated it had jurisdiction to treat the case as though a § 5K.1 motion had been filed and told Amaya not to worry. *Id.* At sentencing, the government did not file a § 5K.1 motion, and the district court reversed course and stated it could not sentence Amaya as though the government had. *Id.* Amaya then moved to withdraw his guilty plea, which the district court denied. *Id.* at 388. On appellate review, this court found that because Amaya pleaded guilty under the mistaken belief that the district court could *sua sponte* treat his case as though the government had filed a § 5K.1 motion, and because "Amaya sought to retract that plea once the district court acknowledged its inability to make such a commitment," the court could not find his guilty plea to be knowing and voluntary. *Id.* at 389.

In *Dolic*, the district court committed numerous Rule 11 errors, the most egregious of which was not asking Dolic how he pleaded to the charges. 439 F. App'x at 428. It also incorrectly stated that the "Factual Basis" supplied the relevant conduct to which Dolic was pleading (leading to an inference that Dolic was subject to a lower sentencing range), did not advise him of the nature of each charge, and failed to advise him of his right to plead not guilty, to have a jury trial, to be represented by counsel at all stages, to confront adverse witnesses at trial, be protected from compelled self-incrimination, and to testify, present evidence, and compel the attendance of witnesses. *Id.* The court found that "[u]nder the totality of these circumstances, there is a reasonable

---

[1] "U.S.S.G. § 5K1.1 allows for downward departure *upon a motion by the Government* stating that the defendant provided substantial assistance in the investigation or prosecution of another offender." *Amaya*, 111 F.3d at 387 n.1.

probability that, but for these errors, Dolic may not have attempted to enter a guilty plea." *Id.*

Neither *Amaya* nor *Dolic* perfectly fits the facts of this case. The errors in *Dolic* were significantly more prevalent and extreme than those present here, although *Amaya*'s "unfulfillable promise" somewhat parallels the district court's statement in this case that Sedberry could withdraw his plea if his sentences ran consecutively. Also similar to *Amaya*, Sedberry clearly evinced a desire for concurrent sentences prior to his entering a plea. However, unlike in *Amaya*, Sedberry's comments were made well before a plea agreement was on the table. Further, in *Amaya*, the defendant moved to withdraw his guilty plea after it was clear the district court would not comply with its previous declaration and, most notably, the reviewing court was not reviewing for plain error. *Amaya*, 111 F.3d at 388–89. Sedberry did not object to his consecutive sentences or move to withdraw his guilty plea. Nor did Sedberry express any concerns about the non-binding aspect of his plea agreements or evince any confusion or hesitation about the agreements prior to or at the rearraignment hearing. In fact, Sedberry does not explain *why* he would not have pleaded guilty but for the district court's Rule 11 violations, and it appears Sedberry had several reasons to accept the plea—including the Government agreeing to dismiss two of the marijuana charges and reducing the total amount of marijuana attributable to him. Accordingly, based on the record as a whole, we cannot say there is a reasonable probability Sedberry would not have pleaded guilty absent the district court's errors.

**B. Rule 11(c)(1)**

We next turn to Sedberry's argument that the district court committed clear error by impermissibly participating in plea negotiations when it told Sedberry it would impose concurrent sentences if he did what he was

"supposed" to do and did not try to escape between rearraignment and sentencing.

Rule 11(c)(1) "prohibits the sentencing court from participating in plea negotiations: 'An attorney for the government and the defendant's attorney . . . may discuss and reach a plea agreement. *The court must not participate in these discussions.*" *United States v. Pena*, 720 F.3d 561, 570 (5th Cir. 2013) (quoting Fed. R. Crim. P. 11(c)(1)). "We have characterized Rule 11's prohibition of judicial involvement as a bright line rule, and an absolute prohibition on all forms of judicial participation in or interference with the plea negotiation process." *Id.* (internal citations and quotation marks omitted). We have previously found that judges improperly insert themselves into the plea negotiations "where their statements could be construed as predictive of the defendant's criminal-justice outcome; suggestive of the best or preferred course of action for the defendant; or indicative of the judge's views as to guilt." *United States v. Draper*, 882 F.3d 210, 215 (5th Cir.) (citing *United States v. Ayika*, 554 F. App'x 302, 305 (5th Cir. 2014) (per curiam) (collecting examples)), *cert. denied*, 138 S. Ct. 2637 (2018). "Thus, where evaluating an objection to improper judicial participation, '[t]he proper inquiry is whether the court was actively evaluating a [defendant's decision to plead guilty], as the court is required to do, rather than suggesting what should occur or injecting comments while the parties are still negotiating.'" *Id.* at 215–16 (alterations in original) (quoting *United States v. Hemphill*, 748 F.3d 666, 673 (5th Cir. 2014)). Once again, because Sedberry did not object in the district court, our review is for plain error. *Id.* at 215.

The Government claims the district court did not participate in the plea negotiations because the district court's statement was simply a warning regarding prospective conduct rather than a suggestion as to what should

occur. The Government argues the district court "obviously" made this statement because it was influenced by Sedberry's commission of a second offense while on pretrial release. While it does not seem "obvious" that Sedberry's previous behavior would lead one to believe Sedberry might try to escape, the Government's characterization of the district court's statement as a word of caution going forward is supported by the district court's pronouncement at the end of the hearing encouraging Sedberry to be on his best behavior.

Even if the district court's statement did amount to a comment on the plea agreements rather than a prospective warning, the comment was made after Sedberry had decided to plead guilty. *See Hemphill*, 748 F.3d at 672–73 (finding no error where the district court's comments on the defendant's sentence came during the plea colloquy after the defendant had already decided to plead guilty). Sedberry cites to *United States v. Rodriguez*, 197 F.3d 156 (5th Cir. 1999), to show that a statement made after a defendant has decided to plead guilty can still violate Rule 11. However, *Rodriguez* is readily distinguishable, as the district court there implied the defendant would likely be found guilty at trial as the defendant was clearly waffling on whether to plead guilty—initially expressing doubt about wanting to plead guilty, then asking to be found guilty, then demonstrating a willingness to go to trial, and finally, after two recesses, deciding to plead guilty. *Rodriguez*, 197 F.3d at 158–59. We do not have such a situation here. Accordingly, the district court's statement was not clear error.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgments of the district court.