# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 25, 2021

Lyle W. Cayce
Clerk

No. 20-50181

UNITED STATES OF AMERICA,

*Plaintiff—Appellee*,

*versus*

RAYMOND EARL FREEMAN,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 7:19-CR-211-1

Before HO, OLDHAM, and WILSON, *Circuit Judges*.

PER CURIAM:*

A federal jury convicted Raymond Earl Freeman of one count of possession of a firearm by a convicted felon. The district court then sentenced him to 96 months of imprisonment and three years of supervised release. Freeman appealed. We affirm Freeman's conviction, but because the district court should have taken § 5G1.3(c) of the Sentencing Guidelines

---

* Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIRCUIT RULE 47.5.4.

No. 20-50181

into consideration when sentencing Freeman, we vacate his sentence and remand for resentencing.

## I.

According to trial testimony, Odessa Police Sergeant Rusty Martin responded to a dispatch regarding a fight in the parking lot of the Zodiac nightclub, including information that one of the individuals possessed a firearm. When Sergeant Martin arrived at the nightclub, the manager indicated that an individual in a nearby vehicle had a firearm. Sergeant Martin shined his flashlight into the vehicle and ordered the driver to roll down his window. The driver, Freeman, denied having a firearm and indicated that another individual in the parking lot had a firearm. The passenger opened the door and, despite Sergeant Martin's order to the contrary, exited the vehicle. Another officer attempted to secure the passenger, and Sergeant Martin ordered Freeman to exit the vehicle. Freeman began "grabbing" to his front and side and stated: "Hold on. Let me put the gun down." A gun fell onto the driver's seat, and Sergeant Martin attempted to restrain Freeman.

Freeman broke free from Sergeant Martin's restraint and fled the scene. Sergeant Martin chased after Freeman but eventually returned to the scene to secure the firearm, a 9-millimeter Ruger P89. Sergeant Martin "emptied the firearm" of ammunition. Sergeant Martin also discovered a substance that looked like crack cocaine near the center console of the vehicle in which Freeman had been sitting. Sergeant Martin showed the drugs to Sergeant Polo Frescas, another officer on the scene who ultimately arrested Freeman. Frescas testified that the amount of cocaine recovered from the vehicle was significant and that, based upon his training and experience as a narcotics officer, the amount was not for personal use and was "enough weight to distribute narcotics."

No. 20-50181

According to Freeman's trial testimony, he was at work when his brother, Anthony Jackson, called him to tell him that Jackson's friend, Stedman Williams, "had got excited about some news across town." Freeman understood this to mean that Williams wished to kill someone. Freeman and his brother then drove to the Zodiac nightclub in his brother's car. Upon their arrival, Freeman encountered his stepdaughter and entered her vehicle. Williams also entered the vehicle.

Freeman stated that once he arrived at the nightclub, he convinced Williams to hand over the firearm and prevented him from killing his intended target. Freeman conceded that he did not contact the police when he found out that Williams wanted to kill someone. And he never informed the police after his arrest that he possessed the firearm only to prevent a murder. Freeman denied knowing there was cocaine in the vehicle "until [Williams] told [him]."

During the jury charge conference, Freeman requested an instruction on the defense of duress or justification. The Government opposed the instruction because Freeman said he went to the club to take the gun away from Williams; the Government thus argued that Freeman placed himself in that situation recklessly or negligently. The Government also noted that Freeman could have contacted the police instead of going to the club himself. The district court agreed and declined to give the instruction.

Ultimately, the jury found Freeman guilty as charged. The presentence report (PSR) applied a base offense level of 20 under Sentencing Guideline § 2K2.1 and a four-level offense enhancement under § 2K2.1(b)(6)(B) because Freeman possessed the firearm in connection with another felony offense. With a total offense level of 24 and a criminal history category of IV, Freeman's advisory Guidelines range of imprisonment was 77 to 96 months. The PSR also listed three pending state charges "related"

to the instant offense: (1) evading arrest or detention with a previous conviction; (2) unlawful possession of a firearm by a felon; and (3) unlawful carrying of a weapon on an alcohol premises.  Freeman did not object to the PSR.  The district court adopted the PSR and sentenced Freeman to 96 months of imprisonment and three years of supervised release.  In sentencing Freeman, the district court did not state whether Freeman's federal sentence would run consecutively to or concurrently with any potential state sentence resulting from the related state charges.

Freeman timely appealed.

## II.

Freeman raises three issues on appeal: (A) the district court's refusal to give Freeman's requested jury instruction on justification; (B) its application of a four-level sentencing enhancement under U.S.S.G. § 2K2.1(b)(6)(B); and (C) the court's failure to order Freeman's federal sentence to run concurrently with any sentence imposed as a result of related state charges, as recommended by U.S.S.G. § 5G1.3(c).  We review each issue in turn.

## A.

Freeman first contends that the district court erred when it refused to instruct the jury on his justification defense (i.e., duress).  We disagree.

District courts are "afforded substantial latitude in formulating . . . instructions."  *United States v. Storm*, 36 F.3d 1289, 1294 (5th Cir. 1994).  When reviewing a district court's "refusal to include a requested instruction in the jury charge," we apply an abuse-of-discretion standard.  *Id.*

"As a general proposition a defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable jury to find in his favor."  *United States v. Branch*, 91 F.3d 699,

711–12 (5th Cir. 1996) (quoting *Mathews v. United States,* 485 U.S. 58, 63 (1988)).  But when the requested instruction "lacks sufficient foundation in the evidence," the court may refuse to give it.  *Id.* at 712.   On appeal, we "view the evidence in the light most favorable to [the defendant] in determining if there [wa]s sufficient evidentiary foundation for a requested instruction."  *United States v. Giraldi*, 86 F.3d 1368, 1376 (5th Cir. 1996) (citation omitted).   Here, even viewing the evidence most favorably to Freeman, he has not shown there was sufficient trial evidence to support his requested instruction.  It follows, then, that the district court did not abuse its discretion in declining to give it.

Because duress is an affirmative defense, Freeman had to "present evidence of each of the elements of the defense before it [could] be presented to the jury." *United States v. Posada-Rios*, 158 F.3d 832, 873 (5th Cir. 1998).  The four elements of duress are:

> (1) that the defendant was under an unlawful and "present, imminent, and impending [threat] of such a nature as to induce a well-grounded apprehension of death or serious bodily injury";
>
> (2) that defendant had not "recklessly or negligently placed himself in a situation in which it was probable that he would be [forced to choose the criminal conduct]";
>
> (3) that defendant had no "reasonable legal alternative to violating the law; a chance both to refuse to do the criminal act and also to avoid the threatened harm"; and
>
> (4) "that a direct causal relationship may be reasonably anticipated between the [criminal] action taken and the avoidance of the [threatened] harm."

*Id*. (quoting *United States v. Harper*, 802 F.2d 115, 117 (5th Cir. 1986)). Evaluating the facts presented by Freeman at trial, the district court determined that Freeman failed to make a threshold showing of each

element.   Specifically, the court determined that Freeman had failed to present evidence that he did *not* "recklessly or negligently" place himself in a situation that forced him to possess a firearm (element two above), or that he had no reasonable legal alternative to possessing a firearm (element three).

Freeman, on the other hand, asserts that his actions were not negligent or reckless.   In his briefing to this court, he contends (1) that he "did not go to the Zodiac Club to commit a crime" and (2) that "the action he took, which was to convince Williams to give him the gun, was legal for most people."   Freeman's first point—that he did not go to the nightclub to commit a crime—is belied by the record.   Convicted felons such as Freeman cannot lawfully possess firearms, 18 U.S.C. § 922(g)(1), and officers found four grams of crack cocaine— "enough weight to distribute narcotics"—next to Freeman and the firearm at issue when Freeman was initially apprehended.   Freeman's second point is irrelevant.

According to Freeman's own testimony at trial, he went to the Zodiac nightclub *to take a firearm* from his brother's friend Williams (purportedly to prevent a murder).   He also conceded that he did not attempt to call the police or any other law enforcement agency before going to the nightclub to take the firearm:

> Q. Well, you went over there to take the gun from him, get him to give you the gun, whatever, get it away from him, correct?
>
> A. Of course.
>
> Q. You didn't call the police, did you?
>
> A. No, I did not.
>
> Q. You didn't say, "Hey, there is about to be a murder here and I know something about that."
>
> A. No, I did not.
>
> Q. "We want to stop it." You didn't say that, did you?

A. No, I did not.

At the very least, then, Freeman's testimony shows that he could not make a threshold showing of the second or third elements of duress.

Based on the record, it was not erroneous for the district court to conclude that it was reckless for Freeman to drive to the nightclub to take the firearm from Williams.  Freeman's contention that he did not "use force" in taking the gun from Williams is beside the point.  As stated *supra*, convicted felons cannot possess firearms, for any reason.  18 U.S.C. § 922(g)(1).  And Freeman had a reasonable legal alternative to retrieving the firearm himself, which he did not pursue.  Indeed, Freeman could easily have called the police in the time it took to drive to the nightclub and take the firearm from Williams.  *See United States v. Gant*, 691 F.2d 1159, 1164 (5th Cir. 1982) (denying the duress defense because defendant did not call the police when he had an opportunity to do so).  But he did not do so.  Nor did he pursue any other legal alternative.  For all these reasons, the district court did not abuse its discretion in denying Freeman's request for a duress instruction.

**B.**

Freeman next contends that the district court erred in applying U.S.S.G. § 2K2.1(b)(6)(B)'s four-level sentencing enhancement.  Because Freeman did not raise this issue during sentencing, we review only for plain error.  *United States v. Rodriguez-Parra*, 581 F.3d 227, 229 (5th Cir. 2009).  "To establish plain error, [the defendant] is required to show that (1) there was error, (2) the error was plain, (3) the error affect[s] his substantial rights, and (4) the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *Id.* (first alteration in original) (quoting *United States v. Redd*, 562 F.3d 309, 314 (5th Cir. 2009)).  Freeman fails to make such a showing.

Under § 2K2.1(b)(6)(B), the four-level enhancement applies when a "defendant . . . used or possessed any firearm . . . in connection with another felony offense; or possessed . . . any firearm . . . with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense." And according to the application notes, "another felony offense," for purposes of subsection (b)(6)(B), "means any federal, state, or local offense, other than the explosive or firearms possession or trafficking offense, punishable by imprisonment for a term exceeding one year, regardless of whether a criminal charge was brought, or a conviction obtained." § 2K2.1, cmt. n. 14(C). The application notes further provide that "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, . . . application of subsection[] (b)(6)(B) . . . is warranted because the presence of the firearm has the potential of facilitating another felony offense . . . ." *Id.*, cmt. n. 14(B). Importantly, "[t]he Guidelines' application notes are authoritative unless they violate the Constitution or a federal statute, or are inconsistent with, or a plainly erroneous reading of, that Guideline." *United States v. Alcantar*, 733 F.3d 143, 147 (5th Cir. 2013) (cleaned up).

According to trial testimony, officers found four grams of crack cocaine in the vehicle, next to both Freeman and the subject firearm. Sergeant Frescas, a narcotics officer, testified that this amount would generally not be for personal use but rather was potentially "enough weight to distribute narcotics." It thus follows that the amount of crack cocaine found in the vehicle was sufficient potentially to establish the felony offense of possession with intent to distribute. *See United States v. Williamson*, 533 F.3d 269, 277–78 (5th Cir. 2008) ("We have held in the past that the mere possession of a quantity of drugs inconsistent with personal use will suffice for the jury to find intent to distribute.") (quoting *United States v. Mays*, 466 F.3d 335, 341 (5th Cir. 2006)).

No. 20-50181

Because possession with intent to distribute is a drug trafficking offense, "application of subsection[] (b)(6)(B) . . . [wa]s warranted" in this case. § 2K2.1, cmt. n. 14(B); *see also United States v. Anderson*, 559 F.3d 348, 358 (5th Cir. 2009) ("When a loaded firearm is found in close physical proximity to narcotics, readily available to the defendant, a connection will usually be found. The fact that no drugs were found on [the defendant's] person and no drug charges were filed does not avail him."). Accordingly, the district court did not err—much less plainly err—in applying § 2K2.1(b)(6)(B)'s four-level sentencing enhancement.

## C.

Lastly, Freeman contends that the district court erred when it did not state in its judgment that Freeman's federal sentence should run concurrently to any sentences imposed on related state charges. Again, Freeman did not raise this issue during sentencing, so we review for plain error. *Rodriguez-Parra*, 581 F.3d at 229. Upon review, we conclude this is one of the rare cases where plain error is present and must be corrected on remand.

As set forth above, the requisite showing for plain error is: (1) an error, (2) that was plain, (3) that affects substantial rights, and (4) that seriously affects the fairness, integrity or public reputation of judicial proceedings. *Id.* Freeman's contention that the district court erred in not ordering that his federal sentence should run concurrently to any state sentence imposed on related charges is premised upon U.S.S.G. § 5G1.3(c). Section 5G1.3(c) provides that when "a state term of imprisonment is anticipated to result from another offense that is relevant conduct to the instant offense of conviction . . . the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment." This means that "to trigger [the] provision, the state sentence must be both (1) 'anticipated' and

9

No. 20-50181

(2) based on conduct 'relevant' to the federal offense." *United States v. Ochoa*, 977 F.3d 354, 356 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 1281 (2021).

It is undisputed that Freeman's PSR provided that he had three pending state charges "related" to his federal offense: (1) evading arrest, (2) unlawfully possessing a firearm as a felon, and (3) unlawfully carrying a weapon on alcohol premises. And the district court adopted the PSR and its factual findings. As a result, § 5G1.3(c) applied to Freeman's sentencing. Nonetheless, the district court failed to mention § 5G1.3(c) when determining Freeman's sentence.[1] This is where the problem lies.

As we recently noted, "the Guidelines are advisory only. But a district court still must consult those Guidelines and take them into account when sentencing." *Ochoa*, 977 F.3d at 356 (quoting *Hughes v. United States*, 138 S. Ct. 1765, 1772 (2018)). Our sister circuit addressed a similar scenario to the one before us in *United States v. Brown*, 892 F.3d 385 (D.C. Cir. 2018). There, the D.C. Circuit concluded that "[b]ecause the district court did not acknowledge that the Guidelines recommended a concurrent sentence, it improperly applied the Guidelines. That misapplication was error." *Id.* at 399–400. The court further concluded that the error was "plain" because, as stated by the Supreme Court, "failing to calculate (or improperly calculating) the Guidelines range" is a "significant procedural error." *Id.* at 400 (quoting *Gall v. United States*, 552 U.S. 38, 51 (2007)). We agree with the *Brown* court and reach the same conclusion here. The district court's failure to take § 5G1.3(c) into account during Freeman's sentencing was a plain error.

---

[1] In fact, the district court did not actually state whether Freeman's federal sentence would run concurrently or consecutively to Freeman's anticipated (related) state sentences. But when the district court is silent on this subject, the presumption is that the sentences run consecutively. *United States v. Candia*, 454 F.3d 468, 475 (5th Cir. 2006).

This conclusion leads us to whether the error affected Freeman's substantial rights. The Supreme Court has clarified that where a district court improperly calculates a defendant's Guidelines range—or, as in this case, fails to consider an applicable Guideline—and

> [w]here . . . the record is silent as to what the district court might have done had it considered the correct Guidelines range, the court's reliance on an incorrect range in most instances will suffice to show an effect on the defendant's substantial rights. Indeed, in the ordinary case a defendant will satisfy his burden to show prejudice by pointing to the application of an incorrect, higher Guidelines range and the sentence he received thereunder. Absent unusual circumstances, he will not be required to show more.

*Molina-Martinez v. United States*, 136 S. Ct. 1338, 1347 (2016); *see also United States v. Garza-Lopez*, 410 F.3d 268, 275 (5th Cir. 2005). While this case is a bit different in that the district court did not improperly calculate Freeman's Guidelines range but rather failed to consider an applicable Guideline, the principle remains the same—that is, there is "a reasonable probability that, but for the district court's [error], [the defendant] would have received a lesser sentence." *Garza-Lopez*, 410 F.3d at 275 (second alteration in original). And we find no "unusual circumstances" here that would require Freeman to show more than this. Freeman has thus made the requisite showing that the district court's failure to consider § 5G1.3(c) affected his substantial rights.

Finally, "[u]nder the fourth prong of plain-error review, we may reverse only if the error seriously affected the fairness, integrity, or public reputation of judicial proceedings." *United States v. Gonzales*, 484 F.3d 712, 716 (5th Cir. 2007) (per curiam). In this court, "whether a sentencing error seriously affects the fairness, integrity, or public reputation of judicial proceedings is dependent upon the degree of the error and the particular facts

of the case." *United States v. John*, 597 F.3d 263, 288 (5th Cir. 2010). "The risk of unnecessary deprivation of liberty particularly undermines the fairness, integrity, or public reputation of judicial proceedings in the context of a plain Guidelines error because of the role the district court plays in calculating the range and the relative ease of correcting the error." *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1908 (2018); *accord United States v. Villegas*, 404 F.3d 355, 365 (5th Cir. 2005) (concluding that where "the district court's error clearly affected [the defendant's] sentence," the fourth prong of plain error review was satisfied; absence of erroneous sentencing enhancement would have reduced the sentencing range from 21–27 months to 10–16 months). Because Freeman may face additional years in prison should his state and federal sentences run consecutively rather than concurrently, we find the fourth prong satisfied. We therefore vacate Freeman's sentence and remand for resentencing with instruction that the district court must *consider*—though it is not bound by—the guidance of § 5G1.3(c).

\*　　\*　　\*

For the reasons stated above, we AFFIRM Freeman's conviction, but we VACATE Freeman's sentence and REMAND for resentencing consistent with this opinion.