United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 17, 2006**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 04-21016

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

GLENN RAY PALMER,

Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before GARZA, PRADO and OWEN, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Glenn Ray Palmer pleaded guilty to use of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A) and possession with intent to distribute five grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). Palmer appeals, challenging the sufficiency of the factual bases of his convictions.

I. Factual Background and Procedural History

On April 19, 2004, police officers arrested Palmer outside his apartment in Houston, Texas. They then went to the

1

apartment, where Rhonda Patterson, who identified herself as Palmer's girlfriend, provided consent to a search. An initial search turned up 19 rocks of crack cocaine above the kitchen sink, 24 rocks on top of the bedroom television, a firearm holster, a .40 caliber Glock magazine, 50 rounds of Winchester ammunition, 20 rounds of .40 caliber Federal ammunition and a safe. The officers obtained Palmer's consent to search the safe, which they did. It contained an unloaded Lorcin .380 caliber pistol and 23 rocks and a quarter "cookie" of crack cocaine. In total, the apartment contained 17.6 grams of cocaine base.

On August 27, 2004, following his indictment, Palmer and the government entered into a plea agreement. Its "Waiver of Appeal" clause included the following:

> The defendant waives the right to appeal the sentence imposed or the manner in which it was determined. The defendant may appeal <u>only</u> (a) the sentence imposed above the statutory maximum; or (b) an upward departure from the Sentencing Guidelines, which had not been requested by the United States as set forth in Title 18 U.S.C. § 3742(b). Additionally, the defendant is aware that Title 28, U.S.C § 2255, affords the right to contest or "collaterally attack" a conviction or sentence after the conviction or sentence has become final. The defendant waives the right to contest his conviction or sentence by means of any post-conviction proceeding.
> The defendant, by entering this plea, also waives any right to have facts that the law makes essential to the punishment either (1) charged in the indictment or (2) proven to a jury or (3) proved beyond a reasonable doubt. The defendant explicitly consents to be sentenced pursuant to the applicable Sentencing Guidelines. The defendant explicitly acknowledges that his plea to the charged offense(s) authorizes the court to impose any sentence authorized by the Sentencing Guidelines, up to and including the statutory maximum

2

under the relevant statute(s).

The same day, pursuant to Federal Rule of Criminal Procedure 11, the district court conducted a hearing at which Palmer pleaded guilty.  The following colloquy took place:

THE COURT: Where did you get the firearm?
THE DEFENDANT: Where did I get it?
THE COURT: Yes
THE DEFENDANT: Bought it off the street, sir.
THE COURT: Why did you have the firearm there in the
     safe?
THE DEFENDANT: I really don't even know.  I wanted to
     get rid of it because it didn't work.  I didn't
     have a clip for it.  So, it was just sitting in
     there really, to tell you the truth.
THE COURT: Well, were you dealing drugs out of that
     apartment?
THE DEFENDANT: I was using drugs.  No, not – no, sir,
     not at the apartment, sir.
THE COURT: Where were you dealing the drugs?
THE DEFENDANT: On the streets.  And I was using drugs.
     I was an addict, sir.
THE COURT: Did you have the firearm to protect the
     drugs?
THE DEFENDANT: No, sir.
THE COURT: Well, why did you have the firearm in the
     safe?
THE DEFENDANT: Because there be kids in that house, and
     I just put it up there because – so couldn't
     nobody get to it.
THE COURT: Well, why did you buy the firearm?
THE DEFENDANT: Why did I buy it?  Protect myself.


On December 15, 2004, the district court sentenced Palmer to 144 consecutive months' incarceration, 84 for the controlled substances charge and 60 for the gun charge.  Palmer timely appealed.


II. <u>Analysis</u>

3

On appeal, Palmer argues that the plea agreement and colloquy do not provide a sufficient factual basis to support either of his convictions. The government disputes this, and also claims that Palmer's appeal waiver bars our consideration of his claims.

## A. Appeal Waiver

As a preliminary matter, we must address whether the waiver in Palmer's plea agreement bars his appeal. Our review in this regard is *de novo*. United States v. Baymon, 312 F.3d 725, 727 (5th Cir. 2002). A defendant may waive his statutory right to appeal provided (1) his or her waiver is knowing and voluntary, and (2) the waiver applies to the circumstances at hand, based on the plain language of the agreement. United States v. Bond, 414 F.3d 542, 544 (5th Cir. 2005)(dismissing appeal of sentence as barred by waiver).[1] In determining whether a waiver applies, we employ normal principles of contract interpretation. United States v. McKinney, 406 F.3d 744, 746 (5th Cir. 2005). Given the significance of the rights they involve, we construe appeal waivers narrowly, and against the government. United States v. Harris, 434 F.3d 767, 770 & n.2 (5th Cir. 2005) (citing United States v. Somner, 127 F.3d 405, 408 (5th Cir. 1997)).

_____

[1] Although Bond dealt with a sentencing appeal, rather than an appeal of conviction like Palmer's, the case it cited, United States v. McKinney, spoke in terms of appeal waivers more generally (albeit also in the context of a sentencing appeal). 406 F.3d 744, 746 (5th Cir. 2005). Bond's two-pronged test applies here.

4

Palmer argues that his waiver does not bar a direct appeal of conviction. He claims that the second and third sentences are limited to appeal of a sentence and the following two to collateral attacks; neither, he asserts, apply to a direct appeal of a conviction. The government does not, in truth, respond to this argument. Rather, its briefing assumes that the plea agreement constitutes a general waiver of all of Palmer's appeal rights. After reviewing the agreement itself and the communication between the district court and Palmer, we disagree with the government's assumption.

The main waiver paragraph of the agreement, quoted above, refers to sentencing appeals and collateral attacks. The first question is whether the language barring a sentencing appeal bars appeal of a conviction. We have rejected reading sentencing appeal waivers that broadly in the past. See United States v. Lopez, No. 05-50602, slip op. at 1 (5th Cir. May 26, 2006)("The waiver has no effect on his ability to appeal, or seek 28 U.S.C. § 2255 relief from, his conviction; the provision affects only his ability to appeal, or seek § 2255 relief from, his sentence."). The government does not argue why this situation calls for a contrary reading. The two main cases on which it relies to enforce the waiver both involve appeals challenging sentences, not convictions. See United States v. Melancon, 972 F.2d 566, 567 (5th Cir. 1992); United States v. Portillo, 18 F.3d 290, 291 (5th Cir. 1995). A defendant's waiver of his right to

5

appeal a sentence is just that: it does not also constitute a waiver of his right to challenge a conviction.

Nor do the fourth and fifth sentences of the first paragraph of the appeal waiver section of the plea agreement bar Palmer's direct appeal. They refer to a collateral attack on a sentence or conviction. The government does not dispute that this appeal is direct and not a collateral attack. Nor does the phrase "any post-conviction proceeding" apply to a direct appeal. Contextually, the phrase follows a sentence stipulating Palmer's awareness of his collateral-attack rights. Reading the phrase broadly is inconsistent with our distinguishing between direct appeals and post-conviction proceedings. See, e.g., United States v. Johnson, 244 F.3d 134 (Table), 2000 WL 1901456 at *1 n.1 (5th Cir. 2000)(per curiam).

The second paragraph of the appeal waiver also does not bar this appeal. That paragraph includes two stipulations: (1) a waiver of Palmer's right to have the facts supporting his sentences charged in the indictment, proven to a jury or proven beyond a reasonable doubt; and (2) a consent to be sentenced pursuant to the Sentencing Guidelines. In neither paragraph do we find reference to a waiver of a right to directly appeal a conviction.

There are two lines in the plea hearing colloquy between the district court and Palmer potentially suggestive of a general

appeal waiver, but they ultimately fail to establish the generality of Palmer's waiver.  Following direct questioning regarding his waiver of sentencing appeals and collateral attacks, the court asked Palmer: "Have you talked to your attorney about giving up your right to appeal and giving up your right to collaterally attack your sentence or judgment?"  Palmer replied: "Yes, sir."  The use of the phrase "right to appeal" could be read broadly to include appeal of a conviction; but its parallel placement to mention of the collateral attack suggests it was a short-hand reference to the waiver of sentencing appeals, especially given the fact that the phrase followed specific questions about both explicit waivers.  Given our duty to construe appeal waivers narrowly, we read Palmer's agreement as having preserved his right to challenge his conviction.[2]

## B. Adequacy of Factual Basis for Convictions

Palmer challenges the adequacy of the factual admissions to support his convictions under both sections 924 and 841.  Because he raises this argument for first time on appeal, we review for plain error.  United States v. Marek, 238 F.3d 310, 315 (5th Cir.

---

[2] Because we reject the government's contention that the waiver applies to the circumstances at hand, a necessary condition for its enforcement, we need not reach the issue of whether the waiver was knowing and voluntary.  We also decline to address the government's attempts to distinguish cases cited by Palmer for the proposition that this court has refused to enforce appeal waivers where the stipulated factual basis did not establish that the defendant was guilty of the crime charged.

7

2001).  This reviewing posture limits our power to correct errors not objected to below, United States v. Mares, 402 F.3d 511, 520 (5th Cir. 2005); and we may not correct an error unless it is plain and affects the substantial rights of the party raising the issue.  Id.  If these conditions are met, we may exercise our discretion "to notice a forfeited error but only if . . . the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  Id.

We address the adequacy of each charge in turn.

1. Adequacy of Factual Basis for Conviction Under § 924(c)

The gravamen of Palmer's appeal is his conviction under subsection 924(c)(1)(A), which provides an additional penalty for the possession of a firearm in furtherance of a drug trafficking crime.  18 U.S.C. § 924(c)(1)(A).  The question is whether the facts adduced in the plea agreement and colloquy suffice to establish that Palmer's possession of the Lorcin .380 pistol was "in furtherance" of drug trafficking.

In United States v. Ceballos-Torres, 218 F.3d 409 (5th Cir. 2000), this Court explained the meaning of this critical phrase. Examining the statutory language and the legislative history underlying it, we concluded that, for subsection 924(c)(1)(A) purposes, possession of a firearm "is 'in furtherance' of the drug trafficking offense when it furthers, advances, or helps forward that offense."  Ceballos-Torres, 218 F.3d at 410-11.

"Mere presence" of the weapon, by contrast, is not enough.  Id. at 414.  We listed several factors helpful to courts determining whether the possession of a weapon was "in furtherance":

> the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found.

Id. at 414-15.  Applying these factors to Ceballos-Torres' case, this court affirmed his conviction.  We noted that the "weapon was loaded and easily accessible in Ceballos's apartment, and he confessed to ownership of the firearm.  It was possessed illegally.  And it was possessed in the apartment along with a substantial amount of drugs and money."  Id. at 415.

The facts here are distinct from those in Ceballos-Torres.  Although there was ammunition scattered over Palmer's apartment, the gun itself was locked in a safe, and not loaded.  Moreover, none of the ammunition matched a .380 Lorcin pistol.  While Palmer's gun was in the apartment with drugs as in Ceballos-Torres, it was separated from much of them.[3]  The gun was in the safe, Palmer claimed, to protect the children from it.  In Ceballos-Torres, we distinguished the firearm possession of a drug trafficker who kept a firearm "otherwise locked and

---

[3]  Ceballos-Torres' gun was accessible from the location of both his substantial supply of cash and his far larger stash of drugs (569.8 grams).  Id. at 411.

9

inaccessible" for hunting or target-shooting purposes from possession in furtherance of drug trafficking. Id. at 415. Palmer, to our knowledge, is no hunter or target (or even skeet) shooter; but he kept his gun locked and unloaded. His case is also distinguishable.

While the facts here are sufficiently different from those in Ceballos-Torres to permit a different outcome, Palmer's responses during the plea colloquy necessarily preclude his conviction under subsection 924(c)(1)(A). Palmer denied use of the gun for trafficking. When asked why he kept it in the safe, he first answered that he did not know why, adding he meant to get rid of it. Later, when asked if he possessed the firearm to protect the drugs, Palmer replied, "No." The district court again asked why he kept the gun secured in the safe, and Palmer answered: "Because there be kids in that house, and I just put it up there because – so couldn't nobody get to it." Three times the district court inquired of Palmer why he possessed the gun, and thrice he denied it was in furtherance of trafficking.

The last question the district court asked before dropping the issue was why Palmer purchased the gun. He replied: "Protect myself." While this answer is not inconsistent with furtherance of drug trafficking, it does not affirmatively establish that as the reason for possession. Taken in context with the three aforementioned denials, Palmer's answer cannot establish that he

10

understood the nature of the charge to which he was pleading guilty. His colloquy with the district court amounts to an admission of possession, but a denial of possession in furtherance of drug trafficking. A denial of a critical element of the charge cannot constitute a guilty plea. See McCarthy v. United States, 394 U.S. 459, 461 (1969).

The government argues that Palmer's admissions regarding the gun are not credible. The substance of a guilty plea has a special character. The plea is "more than a mere confession; it is an admission that the defendant committed the charged offense." Taylor v. Whitney, 933 F.2d 325, 327 (5th Cir. 1991). We consider plea colloquies "[s]olemn declarations in open court" which "carry a strong presumption of verity." United States v. Adam, 296 F.3d 327, 333 (5th Cir. 2002)(quoting United States v. Lampazianie, 251 F.3d 519, 524 (5th Cir. 2001)). Our willingness to accept plea agreements and colloquies as the factual bases for convictions demands a corollary respect for the integrity of their contents. Thus, in McCarthy, the defendant's use of the words "neglectful" and "inadvertent" during his plea colloquy to characterize his actions barred acceptance of his guilty plea because the required *mens rea* for the crime was knowing or wilful. 394 U.S. at 461. The question is not one of the district court's belief of credibility but the plea words themselves. Here they indicate a denial of Palmer's possession of the Lorcin

11

pistol in furtherance of drug trafficking, and cannot be accepted as a guilty plea for that charge.

Because Palmer raises his lack of argument for the first time on appeal, our determination that the district court erred does not end the inquiry. To correct the district court's error, we must determine that it is plain and affects Palmer's substantial rights, then exercise our discretion to correct only if the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Mares, 402 F.3d at 520.

A "plain" error is one which is clear under current law. Russell v. Plano Bank & Trustee, 130 F.3d 715, 722 (5th Cir. 1997). The district court's acceptance of a denial of guilt as a guilty plea runs contrary to the understanding we demand in defendants of the charges against them. "[T]he defendant must possess 'an understanding of the law in relation to the facts'." United States v. Guichard, 779 F.2d 1139, 1144 (5th Cir. 1986) (quoting McCarthy, 394 U.S. at 466). Palmer appeared to understand possession unrelated to his drug trafficking–*mere* possession–as the punishable offense. Ceballos-Torres establishes that this is a misunderstanding, and McCarthy establishes that such a misunderstanding cannot be the basis for a guilty plea.

For an error to affect substantial rights, "the defendant

12

must show that the error 'affected the outcome of the district court proceedings.'"  Harris, 434 F.3d at 774 (quoting Mares, 402 F.3d at 521)).  The defendant must show a "probability 'sufficient to undermine confidence in the outcome.'"  Given that the error here led to Palmer's conviction on a charge otherwise inapplicable, and that it added 60 months to his sentence, we have little trouble determining that it affected Palmer's substantial rights.

Under plain error review, when an error is plain and affects substantial rights, we may correct it only if it seriously affects the fairness, integrity or public reputation of judicial proceedings.  Mares, 402 F.3d at 520.  The integrity of the plea bargaining system is "vital to our national system of criminal justice."  United States v. Ashburn, 20 F.3d 1336, 1347 (5th Cir. 1994).  Maintaining that integrity requires diligently policing its failure to function properly.  In Kennedy v. Maggio, we wrote that a guilty plea based on a fear of a nonexistent penalty "colors the fundamental fairness of the entire proceeding."  725 F.2d 269, 273 (5th Cir. 1984)(determining that attorney's advice to defendant that death penalty available for charged crime constituted ineffective assistance of counsel when penalty not, in fact, available).  We believe a guilty plea based on facts precluding conviction has the same effect.  Palmer's conviction under subsection 924(c) constituted plain error, and we reverse

it.

   2. Adequacy of Factual Basis for Conviction Under § 841

   Palmer also argues that the factual basis for his conviction under section 841 is insufficient, warranting vacation.  In relevant part, the statute criminalizes the possession of a controlled substance-in this case crack cocaine-with intent to distribute.  21 U.S.C. § 841(a)(1).  Palmer asserts the plea agreement and colloquy support only possession, not intent to distribute.

   Under certain circumstances, courts have considered the possession of amounts of crack cocaine less than that found in Palmer's apartment sufficient to sustain a conviction for intent to distribute under subsection 841(a).  See United States v. Kates 174 F.3d 580, 582-83 (5th Cir. 1999)(citing sister courts and upholding conviction under § 841 where defendant possessed 19.7 grams of crack cocaine and federal agent testified to amount "almost surely" being intended for distribution).  The plea agreement stipulated that the police found 17.6 grams of cocaine base in Palmer's apartment.  Citing United States v. Hunt, 129 F.3d 739 (5th Cir. 1997), Palmer argues that this amount alone will not suffice.  In Hunt, the defendant's possession of approximately 8 grams of cocaine was insufficient, even when combined with a razor, "blunts" and a gun hidden in a couch without controlled substances, to support conviction under

14

section 841.  129 F.3d at 743-45.  Palmer's amount of cocaine base possessed falls between those in <u>Kates</u> and <u>Hunt</u>, but we need not plot another point on the crack-possession curve today.[4]

Contrary to Palmer's argument on appeal, his admissions in the plea colloquy provide sufficient additional evidence of the intent to distribute to warrant our upholding his conviction. When asked by the district court whether he was dealing drugs from the apartment, Palmer replied, "I was using drugs.  No, not – no, sir, not at the apartment, sir."  The court followed up, asking where Palmer was dealing drugs.  Palmer responded: "On the streets.  And I was using drugs."  Palmer asserts that these responses do not establish that the crack found at the apartment was intended for distribution.  While some ambiguity may exist in their meaning, we find no plain error in the district court's acceptance of these responses-combined with Palmer's possession-as together providing a sufficient factual basis for conviction under subsection 841(a).

## III. <u>Conclusion</u>

For the reasons above, we AFFIRM the district court's conviction of Palmer for possession with intent to distribute a

---

[4] It is worth noting that both <u>Kates</u> and <u>Hunt</u> involved challenges to convictions by juries, and thus a different standard of review was applicable than is here.

controlled substance under subsections 841(a)(1) and 841(b)(1)(B)(iii) and REVERSE its conviction of him for possession of a firearm in furtherance of a drug trafficking crime under subsection 924(c)(1)(A).  We REMAND for resentencing in accordance with this opinion.